[L. A. No. 137.     Department Two.—December 19, 1896.]

BERNABE BADOSTAIN, RESPONDENT, *v.* FRANCISCO GRAZIDE, APPELLANT.

ASSAULT AND BATTERY—ACTION FOR DAMAGES—EVIDENCE—PRIOR AGREE-MENT RELATING TO DISPUTED ITEM OF ACCOUNT.—In an action for damages for assault and battery, where it appears that the assault was occasioned by a controversy about a disputed item of an account be-tween the plaintiff and defendant, evidence of an agreement made long prior to the assault, which involved the merits of the disputed item, is not relevant, and its admission by the court is error.

ID.—EXEMPLARY DAMAGES—ERRONEOUS INSTRUCTION.—An instruction in an action for damages for assault and battery that, "if defendant wrongfully used force and violence upon the person of plaintiff in a malicious manner, that is, in a manner that showed he intended to vex, injure, or annoy him," then the jury, "in fixing the damages, should not be confined to the actual damage sustained," but might give exemplary damages in addition thereto, is erroneous, as stating in effect that if a battery was committed at all, the jury should award punitory damages, regardless of any malicious intent in the mind of the defendant.

ID.—RULE AS TO EXEMPLARY DAMAGES—QUESTION OF FACT—MALICIOUS INTENT—PROVOCATION—EXTENT OF FORCE.—Upon the facts here appearing the court should have instructed the jury that the presence or absence of a malicious intent in the mind of the defendant was a question of fact to be determined by them from the evidence; that they might allow punitive damages if they believed from the evidence that such intent existed; but that, if the battery was the consequence of a sudden heat resulting from provocation first offered by the plaintiff, and not of a design for his injury deliberately formed by the defendant, and that the force used was not so disproportionate to the provocation as to repel the inference that it was induced thereby, then no exemplary damages should be included in their verdict.

APPEAL from a judgment of the Superior Court of Los Angeles and from an order denying a new trial. LUCIEN SHAW, Judge.

The facts are stated in the opinion.

*J. Brousseau*, for Appellant.

The court erred in instructing the jury that they might give exemplary damages. (*Crosby* v. *Humphreys*, 59 Minn. 92; *Selden* v. *Cashman*, 20 Cal. 57; 81 Am. Dec. 93; *Hirshberg* v. *Strauss*, 64 Cal. 272; *Townsend* v. *Briggs*, 99 Cal. 481.)

*J. B. Dunlap*, for Respondent.

BRITT, C.—Plaintiff had a verdict and judgment for damages for an assault and battery committed on him by defendant. It was in evidence at the trial that plaintiff had been in the employ of defendant for a period of about eight months next before the said battery, during which time he had kept a horse on pasture at defendant's premises; on settlement of accounts defendant deducted from the wages due him the sum of twelve dollars

for pasturage of the horse. Plaintiff testified that when he began work for defendant, he told the latter he wanted the horse pastured at his place, and defendant replied "all right"; that he, plaintiff, did not expect to pay for pasturage; that he told defendant, when the latter proposed to make such deduction from his wages, that it was more than the horse was worth; that thereupon defendant became enraged and struck him in the face. On behalf of defendant there was evidence that he gave to plaintiff an order or draft for the wages due him, less said charge for pasturage, which plaintiff accepted, but at the same time angrily applied to defendant an obscene and insulting epithet; that this occurred in the presence and hearing of defendant's wife and two young daughters; that the conversation between the parties was amicable until plaintiff addressed to defendant the said obscene language, and that the latter being thus incensed struck the blow described by plaintiff and which occasioned the suit. On cross-examination of defendant by plaintiff's counsel, he stated that there had been no agreement to pasture plaintiff's horse without pay. In rebuttal, plaintiff testified that defendant had so promised when he went to work for him. All the evidence concerning the terms of the contract about pasturage was admitted over the objection and exception of defendant. The court instructed the jury, among other matters, that if they believed from the evidence that defendant committed a battery, "That is, wrongfully used force and violence upon the person of plaintiff in a malicious manner, that is, in a manner that showed he intended to vex, injure, or annoy him, and that plaintiff was injured and damaged thereby, then you, in fixing the damages, should not be confined to the actual damage sustained, but may give in addition" exemplary damages; also, that "in case of personal injuries, for which a criminal action might have been brought, exemplary damages may be recovered in a civil suit."

The court erred in admitting evidence of the agreement relative to pasturing the horse—a matter long past

and not requisite, as regards any proper purpose of this case, to the comprehension of things done and said at the time of the assault; the affair was an instance not unprecedented of the settlement of an account between parties in which argument over some disputed item is followed by abuse and that by blows; in such a case the particulars and circumstances of the contract in which are involved the merits of the disputed charge, instead of being relevant and helpful in determining the liability of either party to the other for violence then inflicted, are more likely to be a confusing and misleading element in the inquiry; the jury are apt to conceive that one party or the other is wrong in his notion of his contractual rights, and to allow this conception to influence their verdict. If it be said that evidence of an agreement to pasture the horse without charge was admissible in the present case, in order to show the *animus* of the defendant and justify the visitation of punitive damages on him, the answer is that, if he was in the wrong in demanding pay for the pasturage, his wrong lay in the breach of a contract, to be redressed by an action thereon, and not confounded with a breach of an obligation of wholly different nature, viz: to abstain from injury to the plaintiff's person. If plaintiff could rightfully give his version of the prior contract, defendant could, with equal right, produce proof that no such contract was made, or that it had been in some way discharged; "and thus the attention of the jury would be distracted with a multiplicity of questions and issues." (*Matthews* v. *Terry*, 10 Conn. 455; compare *Lee* v. *Woolsey*, 19 Johns. 319; 10 Am. Dec. 230; *Currier* v. *Swan*, 63 Me. 323; *Cushman* v. *Waddell*, Bald. 57.)

There was error, also, in the instructions which may have enhanced the verdict. To say that "if defendant wrongfully used force and violence upon the person of plaintiff in a malicious manner, that is, in a manner that showed he intended to vex, injure, or annoy him," then the jury "in fixing the damages should not be confined.

to the actual damage sustained," but might give exemplary damages in addition thereto—was to say in effect that if a battery was committed at all the jury should award punitory damages; for it is hard to conceive of any battery voluntarily committed which does not involve the intent on the part of the assailant to vex, injure, or annoy the person assailed. In cases like the present, "the law, in tenderness to human frailties, distinguishes between an act done deliberately and an act proceeding from sudden heat." (*Lee* v. *Woolsey, supra.*) As in a prosecution for homicide, when there is evidence tending to show that the killing was the consequence of a sudden quarrel or heat of passion, the jury may find that the offense was without malice, and therefore manslaughter only, so here they should have been instructed that the presence or absence of a malicious intent in the mind of defendant was a question of fact to be determined by them from the evidence; that they might allow punitive damages if they believed from the evidence that such intent existed; but that if the battery was the consequence of a sudden heat resulting from provocation first offered by the plaintiff, and not of a design for his injury deliberately formed by defendant, and that the force used was not so disproportionate to the provocation as to repel the inference that it was induced thereby, then no exemplary damages should be included in their verdict. The cases tend to this conclusion. (*Lee* v. *Woolsey, supra; Robinson* v. *Rupert*, 23 Pa. St. 523; *Ward* v. *Blackwood*, 41 Ark. 295, 300; 48 Am. Rep. 41; *Crosby* v. *Humphreys*, 59 Minn. 92, 96; *Kiff* v. *Youmans*, 86 N. Y. 324; 48 Am. Rep. 543; *Childers* v. *San Jose etc. Pub. Co.*, 105 Cal. 284, 291; 45 Am. St. Rep. 40.) Considerations similar to the preceding apply to the charge that "in case of personal injuries, for which a criminal prosecution might have been brought, exemplary damages may be recovered in a civil suit." This was entirely too broad. Suppose two persons fight by mutual consent; each is punishable criminally, but neither may recover exemplary damages

in a suit against the other; so, even though they fight 'with great spirit and brutality.' (*Shay* v. *Thompson,* 59 Wis. 540; 48 Am. Rep. 538.) Defendant here was liable criminally for the breach of public order, but whether he was liable to plaintiff in exemplary damages depended upon the strength and cogency of the mitigating circumstances in evidence tending in some measure to palliate such violation; and this was a matter for the jury.

The judgment and order should be reversed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

MCFARLAND, J., TEMPLE, J., HENSHAW, J.