[S. F. No. 4215.   In Bank.—January 23, 1908.]

## FREDERICK MARRIOTT, Respondent, v. THOMAS H. WILLIAMS, Appellant, and TRUXTON BEALE, Respondent.

ACTION FOR DAMAGES—PERSONAL ASSAULT — PISTOL WOUNDS — EVIDENCE—ACTS AND DECLARATIONS—RES GESTÆ—HARMLESS ERROR.— In an action for damages for a personal assault by defendants, and for pistol wounds inflicted upon plaintiff by one of the defendants while ascending stairs to his room, evidence of his acts and declarations, after he had reached his room and the defendants had left the house, while suffering from his wounds, requesting his wife to enter and lock the door and the hall-door, which she did, was technically erroneous, as not part of the res gestæ, either as tending to show his physical condition, or that he was in fear of further injury; but it is held, in view of the fact that plaintiff had no weapon, that said evidence was harmless on any theory of self-defense.

ID.—CRIMINAL PROSECUTION—CROSS-EXAMINATION OF PLAINTIFF—REFUSAL OF PROOF OF ACQUITTAL—HOSTILITY—HARMLESS ERROR.— Where, as matter of fact, the defendants had been acquitted on a criminal prosecution by the plaintiff, and after he had answered on cross-examination that he was the prosecuting witness in that case, the refusal to allow proof of the acquittal of defendants, which was pertinent only to show his feeling and bias against the defendants, and as going to his credibility as a witness, was harmless error, where such feeling was fully admitted, and was manifest throughout the case, and where the circumstances were such that his hostile feeling would have been inferred by the jury.

ID.—CHARGE OF MALICE—EXEMPLARY DAMAGES—EVIDENCE OF WEALTH OF DEFENDANTS.—Where the complaint alleged malice of the defendants in making the assault, and claimed exemplary damages, evidence was admissible for the plaintiff to show the wealth of the defendants, at the time of the trial, to enable the jury to determine what amount of punishment would be inflicted upon a defendant against whom judgment was rendered.

ID.—PLEA IN MITIGATION OF DAMAGES—DEFAMATORY PUBLICATION BY PLAINTIFF—PROPER INSTRUCTION.—Where the defendants pleaded in mitigation of damages the publication by the plaintiff in his newspaper of defamatory articles against the defendants, which caused them great indignation, the court properly instructed the jury that these matters could not be considered in reduction of the actual damages accruing to plaintiff from his pain, physical injuries, loss of time, and moneys expended, or any other element of actual damages, but only reduction of, or set-off against the exemplary damages.

Id.—Admission of Assault and Injury—Plea of Self-Defense—
Burden of Proof.—Where the defendants admitted the assault upon
and injury of the plaintiff, and the answer pleaded that they were
inflicted in self-defense, the burden of proof was upon the defend-
ants to establish such affirmative defense by a preponderance of
evidence. There is no presumption that a bodily injury is justifiable
and the justification must be proven by him who asserts it.

Id.—Instructions as to Joint Verdict for Single Tort.—The court
properly instructed the jury that in actions against two or more
persons for a single tort, there cannot be two verdicts for different
sums against different defendants on the same trial; that there can
be but one verdict for a single sum against all who are found
guilty of the tort, and that all who are guilty at all, are liable for
the whole amount of the actual damages arising from the injury
inflicted, irrespective of the degree of culpability.

APPEAL from an order of the Superior Court of the City
and County of San Francisco denying a new trial. M. C.
Sloss, Judge.

The facts are stated in the opinion of the court.

H. T. Creswell and P. F. Dunne, for Appellant.

Hiram W. Johnson and Albert M. Johnson, for Respondent.

SHAW, J.—This is an action to recover damages for per-
sonal injuries inflicted upon the plaintiff by defendants. The
jury rendered a verdict against the defendant, Williams,
alone, and judgment was entered accordingly. The appeal is
by the defendant, Williams, from an order denying his motion
for a new trial.

The complaint alleges that the defendants entered plaintiff's
home and there assaulted, beat, and wounded him, shooting
him twice in the leg, breaking both bones below the knee and
piercing the fleshy part of the thigh, and bruising and cutting
his head and hand. The answer admits that Beale inflicted
the cuts and bruises on the head and hand and that Williams
shot plaintiff in the leg, but alleges that it was all done in
necessary self-defense. Upon the trial there was practically
no controversy over the fact that Beale cut and bruised the
plaintiff's head and hand by beating him with a pistol, and
that Williams shot plaintiff in the thigh and below the knee
breaking the bones as alleged.

The plaintiff was the publisher of a weekly paper called the *News Letter*. The defendants went to his house for the avowed purpose of demanding and procuring from him a retraction of a statement published in the paper. Upon entering the hallway of the house, the plaintiff asked them for their hats and took Beale's hat and started toward the rear of the hall to hang it on the hat-rack. Before, or immediately after, this was done, Beale demanded of Marriott the retraction, and almost immediately struck the blows on the hand and head, while the two were engaged in a scuffle. Marriott broke away and started to run up the stairway, which was on the left side of the hallway. There were twenty steps in the stairway, and about the fourteenth step from the bottom it made a quarter turn to the left to reach the floor above. When he had gone perhaps a little more than half way up, Williams shot at him three times, hitting him twice, as alleged. Upon receiving the shot which broke his leg, the plaintiff fell forward upon the upper steps and crawled to the upper floor and into his bedroom. Almost immediately his wife came into the room from the upper part of the stairway where, as she testified, she witnessed a part of the shooting. The defendants did not pursue Marriott, but stood on the lower floor during the altercation and shooting and until Marriott had disappeared, and then left the house.

Over the objection of the defendant, the plaintiff and his wife were allowed to testify that immediately after the shooting and upon his arrival in the bedroom he asked her to come in where he lay and lock the door of that room and also to lock the hall-door of another room which opened into the bedroom, and that she immediately did so. The objection to this evidence was that it was immaterial and incompetent. This ruling is assigned as error.

It may be conceded that these acts and declarations were not part of the *res gestæ* of the shooting. They occurred after the injury was done, and not in the sight or hearing of the defendants. They tended to prove no fact material to the case, except the physical condition and mental state of the plaintiff after he was shot. They would tend to show the plaintiff's fear that the defendants would follow him and inflict more injury, or annoy him or his wife in some way, and that he was himself unable to take the precautions re-

quested. We may concede that the evidence was incompetent
to prove his physical condition, but its effect on that part of
the case would be so trivial and inconsequential that it could
not produce injury. So far as the acts and declarations tended
to show that the defendant was at that time in fear, if we con-
cede that they were not part of the *res gestœ* on that point,
they were immaterial. The ruling then was perhaps tech-
nically erroneous. The inquiry arises whether the proof of
said acts and declarations was substantially prejudicial to the
case of the defendant.

Counsel contends with much earnestness that it was very
prejudicial because of its bearing upon the issue of self-
defense. The defendant, Williams, testified that Marriott, as
he was running up the stairway, turned his side around to the
left, at the same time making a motion for his hip pocket,
and that thereupon he, Williams, believing that Marriott in-
tended to draw a pistol to shoot him, drew his own pistol and
fired three times at Marriott as fast as he could. Beale also
testified that he saw the threatening motion of Marriott.
This motion of Marriott constitutes the sole basis of the claim
of self-defense on the part of Williams. He took no part in
the assault on the lower floor of the hall. The argument in
regard to the effect of the evidence about the locking of the
doors runs thus: The motion towards the hip pocket was
prompted by courage and the spirit of combat. The locking of
the doors was requested because Marriott was then in fear and
desired protection. Proof of the manifestation of the latter
feeling, so soon after the manifestation of the former, tended
to throw doubt on the existence of the former and, to that
extent, tended to disprove the making of the hip-pocket mo-
tion. This argument is not of great force, at best, and what
little strength it has is much impaired when we consider that,
in the meantime, Marriott had received two severe wounds,
one of them dangerous, had had his leg broken by one of
them, and that at the time he requested the locking of the
doors he was lying on the floor of his bedroom suffering inde-
scribable agonies from his wounds, as he testifies. Such in-
tervening circumstances and such condition would probably
unnerve the most courageous person, or at least remove all
desire to attack and substitute therefor the desire for pro-
tection. There are, however, other facts which show that the

evidence could have had no substantial prejudicial effect. It was proven, without contradiction, that Marriott did not have a pistol, or other weapon, upon his person. The fact was established. Not having any pistol to draw, he could not have made the motion with the intent to draw it. There was, therefore, no real danger to Williams, no necessity for him to shoot in self-defense; nothing, at most, but a mere appearance of danger. If the suspicious motion was made, as claimed, it must have been one of those involuntary movements of the arms which many people make in running, which Williams, in his combative mood, mistook for a motion to draw a pistol, or it may have been a pretense of such motion, made by Marriott to intimidate the defendants and prevent their further pursuit or gain time to reach a place of safety. If it was the latter, it would be entirely consistent with the feeling of fear and the desire for protection manifested in the bedroom, and proof of the existence of one would not tend to disprove the other. If it was the mere accidental and unconscious motion made in running, it would have no significance at all with respect to his state of mind, and the proof of the subsequent fear and desire for protection would be proof of an immaterial fact. In either case the evidence objected to could have produced no injury to the defendants' case.

With regard to the blows, inasmuch as the verdict was in favor of Beale, who alone inflicted them, we must assume that the jury held them to be justified, and hence the effect of the evidence of locking the doors on this part of the case was not injurious.

What has been said is also applicable to the objection to the admission of similar evidence, introduced in rebuttal, in connection with proof of declarations by Mrs. Marriott, inconsistent with her testimony as a witness for plaintiff, and nothing further need be said with regard thereto.

The defendants had been acquitted upon a criminal prosecution for the assault upon Marriott. On cross-examination Marriott testified, in answer to the defendants' questions, that he was the prosecuting witness in that case. The court refused to allow proof of the fact of acquittal of the criminal charge. The evidence was pertinent only to show his feeling and bias against the defendants and thereby to impeach his credibility as a witness. Even if we concede that natural chagrin at the

defeat of the criminal prosecution might have added to the intensity of his feeling and that, in general, the proof would be admissible for that purpose solely, it would be harmless error here, where the feeling was freely admitted and was manifest throughout the case, and where the circumstances were such that it would have been inferred by the jury, even if there had been no proof or exhibition of it.

The complaint alleged malice on the part of the defendants and asked exemplary damages. It was therefore proper to allow evidence of the defendants' wealth. (*Sloan* v. *Edwards*, 61 Md. 100; *Webb* v. *Gilman*, 80 Me. 177, [13 Atl. 688]; *Draper* v. *Baker*, 61 Wis. 450, [50 Am. Rep. 143, 21 N. W. 527]; *Brown* v. *Evans*, 17 Fed. 912; 3 Cyc. 1095; 2 Am. & Eng. Ency. of Law, 997; 1 Ency. Ev., 1004.) Such evidence is admitted to enable the jury to determine what amount of punishment would be inflicted upon the defendant by compelling him to pay a given sum of money. Hence it is proper to show his wealth at the time of the trial, as was done here, instead of at the time of the injury.

In mitigation of damages the defendants pleaded the publication of the articles above referred to, which, as they allege, were defamatory and gave them just cause for great indignation. The court instructed the jury that these matters could not be considered in reduction of the actual damages accruing from his pain, physical injuries, loss of time and moneys expended, or any other element of actual damages, but only in reduction of, or set-off against, the exemplary damages. That this was a correct exposition of the law is well settled. (*Goldsmith* v. *Joy*, 61 Vt. 488, [15 Am. St. Rep. 923, 17 Atl. 1010]; *Badostain* v. *Grazide*, 115 Cal. 429, [47 Pac. 118]; *Fenelon* v. *Butts*, 53 Wis. 351, [10 N. W. 501]; *Corcoran* v. *Harran*, 55 Wis. 122, [12 N. W. 468]; *Donnelly* v. *Harris*, 41 Ill. 128.)

The assault and injury to the plaintiff were admitted. The answer that they were inflicted in self-defense was an affirmative defense, which it was necessary for the defendants to establish by a preponderance of the evidence. A person who sues for a personal injury at the hands of another is not bound to prove, in the first instance, that he was not the aggressor and that the defendant did not act in self-defense. He must prove the assault and the injury, if they are denied. In so doing, he may incidentally bring out facts tending to

support a plea of self-defense, and if so the defendant will be entitled to the benefit of such evidence. But the burden of proof to establish the self-defense remains with the defendant. There is no presumption that a bodily injury is justifiable, and the justification must be proven by him who asserts it. The instructions of the court embodying these propositions were properly given. (*Sellman* v. *Wheeler,* 95 Md. 751, [54 Atl. 515]; *Gizler* v. *Witzel,* 82 Ill. 326; *Johnson* v. *Strong,* 22 Ky. Law Rep. 577, [58 S. W. 430]; *Phillips* v. *Mann,* 19 Ky. Law Rep. 1705, [44 S. W. 379]; *Rhinehart* v. *Whitehead,* 64 Wis. 42, [24 N. W. 401].)

In actions against two or more persons for a single tort, there cannot be two verdicts for different sums against different defendants upon the same trial. There can be but one verdict for a single sum against all who are found guilty of the tort. All who are guilty at all are liable for the whole amount of the actual damages arising from the injury inflicted, irrespective of the degree of culpability. (*Huddleson* v. *Borough,* 111 Pa. St. 110, [2 Atl. 200]; *McCool* v. *Mahoney,* 54 Cal. 492; *Nichols* v. *Dunphy,* 58 Cal. 607; *Everrord* v. *Gabbert,* 83 Ind. 492; *Carney* v. *Reed,* 11 Ind. 417; Cooley on Torts, p. 136; 1 Sutherland on Damages, sec. 140.) The court did not err in instructing the jury to this effect.

There are some other objections to the charge to the jury and there are other rulings in the admission of evidence which are questioned, but they are all either covered by what we have said or they are too trivial to require notice.

The order is affirmed.

McFarland, J., Lorigan, J., Angellotti, J., and Beatty, C. J., concurred.

Rehearing denied.