[L. A. No. 1894.  In Bank.—February 27, 1908.]

## J. T. WALKER, Respondent, v. JOSEPH CHANSLOR et al., Appellants.

ACTION FOR PERSONAL INJURIES—ASSAULT AND BATTERY UPON TRESPASSER—FORCIBLE DISPOSSESSION BY OWNER.—An action will not lie in favor of a trespasser upon land of the owner, who seeks forcibly to prevent the entry of the owner thereupon, to recover damages for personal injuries inflicted by the owner in dispossessing trespassers; provided no more force is used than is necessary to make the entry effective.

ID.—COMMON-LAW RULE—CODE REMEDY FOR FORCIBLE ENTRY EXCLUSIVE.—The common-law rule as to the right of an owner forcibly to dispossess trespassers, using only necessary force to that end, prevails in this state, except so far as modified by the code regulating forcible entry, which provides an exclusive remedy for trespassers in possession forcibly dispossessed by the owner. If the force used was not excessive, the trespassers can maintain no personal action against the owner.

ID.—EVIDENCE IN PERSONAL ACTION—FORCIBLE DISPOSSESSION OF OIL LAND—TITLE OF DEFENDANTS—SELF-DEFENSE—ADVICE OF COUNSEL.

—In a personal action for damages for the forcible exclusion of persons in possession of oil lands as adverse claimants, where the answer pleaded title in the defendants and self-defense against an adverse shooting by the occupants with weapons, after notice of plaintiff's title and demand of possession under advice of counsel, it was reversible error to exclude the evidence of defendants' title and of the other facts pleaded and offered in evidence.

ID.—RELEVANCY OF OFFERED EVIDENCE TO DAMAGES.—The offered evidence as to title and as to the other matters bearing on the intentions and good faith of the defendants was relevant not only to the question of exemplary damages, but also as to the question of actual damages and as tending to show a complete defense to the action in the use of force only adequate to repel the attack and obtain the rightful possession of their property.

ID.—INJURY OF EMPLOYEE OF ADVERSE CLAIMANT—RIGHT OF DISPOSSESSION.—If defendants as owners of the land had the right to dispossess the adverse claimants without title, they had the same right to dispossess the plaintiff as their employee; and if he was injured without the use of more than necessary force to dispossess all trespassers, he can maintain no action for the resulting injury.

ID.—REVERSAL OF JUDGMENT FOR EXCLUSION OF EVIDENCE—QUESTION AS TO EXCESSIVE USE OF FORCE NOT CONSIDERED.—In reversing the judgment for the exclusion of offered evidence bearing on the issues involved the question as to whether the other evidence in the record tends to show an excessive use of force by the defendants cannot be considered, the action having been tried on the erroneous theory that defendants were on the land without right to employ any force whatever.

ID.—IMPROPER EXCLUSION OF EVIDENCE TO SHOW THAT OCCUPANTS WERE ARMED.—It was error to exclude evidence that the adverse occupants of the land were armed with deadly weapons when they came upon the property of which defendants pleaded the ownership, and were so armed while in possession and up to the time of defendants' entry upon the land. Such evidence was admissible, in connection with other circumstances, to be considered in determining whether defendants acted reasonably and in good faith, without malice, in making their entry upon the premises also armed, and as bearing upon the question whether they were using only reasonable force in doing so.

APPEAL from a judgment of the Superior Court of Kern County and from an order denying a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Byron Waters, for Appellants.

A. D. Warner, Thos. Carroll, John Leo, and W. W. Kaye, for Respondent.

LORIGAN, J.—This action was brought to recover damages for an assault and battery alleged to have been committed by defendants upon plaintiff.

The evidence discloses that the assault and consequent injuries to plaintiff occurred in a contest between two oil companies for the possession of a quarter section of land.

Trial was had before the court without a jury, and from the findings of the court it appears that on April 14, 1901, an oil corporation known as the Superior Sunset Oil Company went into the possession of said quarter section—the northwest quarter of section 26, township 32 south, range 23 east M. D. M., in Kern County—and was in occupation thereof on April 20, 1901, and continued to occupy it until some time thereafter; that on the nineteenth day of April, 1901, plaintiff went into the service of said corporation, and at the time the injuries complained of by him were sustained was upon said premises, together with certain officers and other employees of said corporation; that about the hour of 12:30 A. M. of April 20, 1901, these defendants (appellants herein) who were either officers, directors, or stockholders of another oil company known as the Mt. Diablo Mining and Development Company, together with the employees of said company, all armed with rifles, guns, and pistols, went upon said land with the intention of driving all persons connected with the Superior Sunset Oil Company therefrom; that upon the entry of defendants and such employees upon the said land, an employee of the Superior Sunset Oil Company—Cornell—went out to meet them in order to ascertain their reason for coming on the land; that when he came up to them defendants commanded him to throw up his hands, and, upon his refusal to do so, began shooting at him; that when the shooting commenced plaintiff and others connected with the Superior Sunset Oil Company ran over to where the defendants were to ascertain what was going on; that these defendants and those with them immediately began shooting at plaintiff and those who accompanied him, firing some seventy-five or a hundred shots; that plaintiff was shot through the body and received several other gunshot wounds at the hands of defendants and those with them,

resulting in great suffering to plaintiff, and in his permanent disfigurement and injury, to such an extent as to incapacitate him from doing any physical work.

The court further found that at the time of the shooting the Superior Sunset Oil Company was in possession and occupation of said quarter section, claiming it as its own, as lands chiefly valuable for petroleum oils, under oil mining locations thereof, and that when defendants entered thereon they had no right or business on said land, and were there in violation of law; that the shooting of plaintiff by said defendants was willful and deliberate, the result of an unlawful conspiracy by defendants to violently and by force of arms drive the officers and employees of the Superior Sunset Oil Company and plaintiff off said lands, and that such shooting by defendants was wanton and done with malice and deliberate intent to harm the plaintiff and the other parties who were with plaintiff on the land.

The court rendered judgment in favor of plaintiff against nine of the defendants for the sum of eight thousand five hundred dollars, five thousand dollars thereof being for actual damages and three thousand five hundred dollars for exemplary damages. These nine defendants appeal from the judgment and from the order of the court denying their motion for a new trial.

Before proceeding to consider the merits of these appeals it is proper, as bearing on the points presented here for consideration, to say that there was testimony in the case, introduced on behalf of defendants, that when the officers and employees of the Superior Sunset Oil Company were about to enter and take possession of said quarter section on April 14, 1901, they were met by the superintendent of the Mt. Diablo Oil Company (of which the defendants were officers, directors, and stockholders), who was then upon the section, and who told them that the land belonged to the Mt. Diablo Mining and Development Company, that the company had an oil derrick on it, that he was superintendent, managing the property for it, and they were forbidden to enter, but nevertheless did so. There was evidence also offered by defendants, that after they entered on the property on the night of the shooting their spokesman stated to the person representing the Superior Sunset Oil Company, who came to meet them, that they (defendants) were representatives of the Mt. Diablo Company and

were there to notify the Superior Sunset Oil people to get off the land—that the land belonged to the Mt. Diablo Company; that the Superior Sunset Oil Company not only refused to vacate, but notified defendants to immediately withdraw or take the consequences; that this declaration and notice was immediately followed by shots being fired at defendants by persons representing and in the employ of the Superior Sunset Oil people, who were in the background; that the defendants returned the fire and the shooting then became general on both sides, resulting in the wounding of plaintiff and other employees of the Superior Sunset Oil Company; that thereupon the firing ceased and the defendants withdrew from the premises.

The principal points urged on the appeal for a reversal are as to the rejection of evidence by the trial court, offered by the defendants under their amended answer.

In that answer defendants set up that the Mt. Diablo Mining and Development Company was the owner of the lands in question and on the fourteenth day of April, 1901, was in the possession thereof, and that defendants were employees, officers, and directors of that corporation; that on the fourteenth day of April, 1901, the Superior Sunset Company forcibly dispossessed said Mt. Diablo Company, and thereafter maintained possession of said lands; that on April 19, 1901, defendants, at the instance of the Mt. Diablo Company, and on its behalf, went on the said lands to protect the interest of said corporation, and while thereon were shot at by plaintiff and the other employees of the Superior Sunset Oil Company without cause or provocation, and only returned the fire of said parties in defense of their lives; and that any gunshot wounds received by plaintiff were by reason of said unlawful attack of the Superior Company's employees upon the defendants.

While many exceptions were reserved to the rulings of the court in the admission and rejection of testimony, the points relied on on this appeal relate only to the rejection by the court of evidence tendered by the defendants to show the title of the Mt. Diablo Oil Company to the quarter section in question, and the refusal of the court to allow the witnesses of defendants to testify as to their intentions in going upon said land, and to the taking of the advice of counsel relative to

their contemplated action in doing so; also as to the refusal of the court to permit defendants to show that the officers and employees of the Superior Sunset Oil Company were armed with deadly weapons when, on April 14, 1901, they came upon the quarter section where plaintiff was subsequently injured, and that they were armed from that time up to the occurrence out of which plaintiff's injuries were sustained.

Upon the trial of the cause the plaintiff was permitted to show that the quarter section in question was, on April 19, 1901, unoccupied public land, and that the Superior Sunset Oil Company on that day took possession of and occupied it; that it built a bunk-house and cook-house on the land for its officers and employees, and had been, up to the time of the entry by defendants, engaged in constructing a derrick and placing the necessary machinery for oil drilling purposes, and the court, as we have heretofore stated, found that said Superior Sunset Oil Company was, at the time of the injury of plaintiff, in the possession and occupancy of said land, claiming it as its own.

When the defendants tendered their evidence to show title in the Mt. Diablo Mining and Development Company to the land, as set up in their amended answer, an objection interposed by counsel for plaintiff that "any question of title is irrelevant and immaterial for any purposes of the case" was sustained, the court stating, "I don't think if they had a United States patent they would have any right to go there and force parties who were there wrongfully off the premises. I am not going to try any question of title." Subsequently, the whole deraignment of title of the Mt. Diablo Mining and Development Company to this quarter section was deemed offered by defendants, objected to and the objection sustained. Under exceptions taken by defendants to both these rulings, the question as to the correctness of such rulings is presented for review.

This appeal was originally heard by the district court of appeal for the second appellate district, and in deciding it, it was held by that court that the rulings of the trial court, rejecting the offer of proof of title, as far as it was interposed as a defense against the claim of plaintiff for actual damages was correct; that the matter of title of the Mt. Diablo Company was not a material issue in the case. The appellate court, how-

ever, held that while evidence relative to the title of the Mt. Diablo Company was inadmissible to prove title as a defense to the claim for actual damages, it was admissible as bearing upon the claim of plaintiff for exemplary damages; that for this latter purpose it was admissible, and was one link in defendants' chain of defense, namely, that the Mt. Diablo Company had rights in the land, which defendants, as officers and stockholders of that company, were endeavoring to protect; that the other links in this chain of defense were to be found in the other evidence sought to be introduced relative to the taking by defendants of the advice of counsel and their intentions in entering upon the land where the shooting took place.

In harmony with these views, the appellate court held that it was error to exclude the evidence tendered on all these matters—the title of the Mt. Diablo Company, the taking of advice of counsel, and the intentions of defendants—solely, however, because they were admissible as bearing on the question of exemplary damages, and directed that the judgment and order appealed from should be reversed for this error, unless the plaintiff would, within a given time, elect to accept the judgment for actual damages alone and release that portion of the judgment awarding him exemplary damages.

A petition of appellants that the cause be heard and determined by this court, having been granted, the matter is now before us for disposition.

There can be no question but that the district court of appeal was right in holding that the evidence offered by the defendants of title in the Mt. Diablo Company to this land, the taking of advice of counsel by defendants as to their contemplated action with reference to entering upon the property in question, and their intentions in doing so, were admissible on the question of exemplary damages. Damages of an exemplarly character could only be assessed against the defendants upon a showing of malice in fact as distinguished from malice in law. Under the claim made by the plaintiff for exemplary or punitive damages, the good faith and motives of the defendants were directly in issue. And, as bearing on that issue any facts which tended to show their motive and intent in entering upon the premises in question were admissible. As was properly said by the district court of appeal on that sub-

ject: "In some forms of action certain facts being shown, a cause of action for actual damages is conclusively established. Even in such cases the evidence so held to be conclusive as to actual damages is at most *prima facie* evidence only of the right to exemplary damages. (*Childers* v. *Mercury,* 105 Cal. 289, [45 Am. St. Rep. 40, 38 Pac. 903]; *Taylor* v. *Hearst,* 107 Cal. 269, [40 Pac. 392].) Malice in fact is defined in the former case to be a 'spiteful or rancorous disposition which causes an act to be done for mischief.' Malice in fact is always a question for the jury. (*Badostain* v. *Grazide,* 115 Cal. 429, [47 Pac. 118].) Under our system where all persons may testify a witness may be examined as to the intent with which he did a certain act, where that intent is a material thing in the action. Even in a criminal case a defendant may testify as to the intent with which he entered a building or killed a human being, although, of course, a jury is not bound to believe the witness either in a criminal or civil action. But such testimony is competent and relevant and not immaterial. (*Barnhart* v. *Fulkerth,* 93 Cal. 497, [29 Pac. 50]; *People* v. *Morton,* 72 Cal. 62, [13 Pac. 150]; *Kyle* v. *Craig,* 125 Cal. 114, [57 Pac. 791].)

Upon this point it is unnecessary to engage in any further discussion because the claim of appellants that this testimony offered by them was admissible upon the question of exemplary damages is not contested by respondent in his original brief. The claim of error in this respect is not there discussed by counsel for respondent, or authority advanced by him in support of the ruling of the trial court in his briefs. Nor in the supplemental brief of respondent, filed on rehearing here is it undertaken to defend the rulings in this regard. All that is insisted on here is, that some evidence offered as to the good motives and intentions of the defendants in making entry on the land did not sustain them. But this is beside the point urged here. The question is not what was the effect of the evidence on these points which was admitted, but whether it was error to reject other and additional evidence offered on this subject, and we make no question but that it was.

But while we agree with the district court of appeal in its views as to the admissibility of all this evidence offered, as far as it went, we are of the opinion that that court took too re-

stricted and constrained a view as to the extent to which proof of title in the Mt. Diablo Company, offered by appellants, was available to them, when it held that such evidence was admissible upon the question of exemplary damages alone.

The amended answer set up that the Mt. Diablo Mining and Development Company was the owner of the land in question on April 14, 1901, and had been forcibly dispossessed therefrom by the Superior Sunset Company on that day; that the defendants as officers, directors, and employees of the Mt. Diablo Company, at its instance and on its behalf, went on said premises on the nineteenth day of that month to protect the interest of the latter company; that while there they were attacked by the employees of the Superior Sunset Company and defended themselves against said attack, and that any injuries sustained by plaintiff were received while defendants were repelling such attack in self-defense. In other words, that the Mt. Diablo Company, at all such dates, as owner of the land, was entitled to the possession of it; that the defendants, as officers thereof, entered only in the exercise of the right of entry possessed by said company as owner of the property and only used such force against those wrongfully in possession as was necessary to protect them in the exercise and assertion of such right.

The view of the district court of appeal was that this defense could not be asserted against a claim for actual damages; that although one was the owner and entitled to the immediate possession of property, yet if he attempted to obtain possession of his property by force, and in doing so, injury was sustained by a trespasser thereon, proof of such right of entry which the owner attempted to exercise, employing no more force than was necessary to expel the trespasser, would be available to him in defense of a claim for exemplary damages only; that the existence of such right, and its exercise, without unnecessary force, would be no defense against a claim of the trespasser for actual damages sustained by him while the owner was asserting his right of entry.

This view, however, is incorrect. The rule obtaining in this state is subject to no such limitation. It is broader and is the rule of the common law. At common law the owner of real estate had the right to enter upon his property to expel by force an intruder and in doing so was entitled to use all the

force necessary to secure possession. Having the right of entry and exercising it, he would not be subject to an action for tort for damages resulting either from his entry or from any assault upon or physical injury sustained by one in wrongful possession, provided he used no more force than was necessary to dispossess him. The trespasser could only maintain an action for damages against the owner, provided an excessive use of force was employed in making the entry or dispossessing him, and then only for that excess. The rule of the common law is the rule which obtains in this state, except in as far as it has been changed by the provisions of the code relative to the summary remedy provided therein for a forcible entry made upon real property. Under these provisions a right of action is given to one wrongfully in actual possession of property where a forcible entry is made, even by the owner, in which action damages occasioned through the forcible entry may be recovered, and judgment for the restitution of the property had. But the code prescribes a method of procedure and the extent of the remedy for such forcible entry, and that remedy is exclusive. A person wrongfully in possession, dispossessed by the owner of the property having a right of entry, and no excessive force being used in asserting it, is not entitled to maintain any other action than is afforded for a forcible entry under the code. He was not entitled to maintain, under such circumstances, any action whatever under the common law, and the common-law rule has only been changed in this state to the extent, and no further, that the code affords him a remedy under its provisions referred to which he otherwise would not have.

Having these principles in mind, it will be observed that this action is not brought under the provisions of the code relative to forcible entry. It is an action brought purely for assault and battery, and is subject to the common-law rule as to such actions, which is that it is a complete defense to their maintenance, either for exemplary or actual damages, if it be shown that the injuries claimed to have been sustained by one wrongfully in possession, were sustained while the owner of the property was exercising a right to the possession of his land, although using force to obtain such possession, if no more force was employed than was necessary to accomplish it.

We have said that this rule of the common law applies in this state to actions of this character, and we proceed now to refer to the authorities so declaring. This entire matter— the rule of the common law and the extent to which it has been changed by the summary proceeding for forcible entry under the code—is so thoroughly considered in the cases to be referred to as to make some quotations from them suffice for any further discussion of the subject.

Referring first to the case of *Canavan* v. *Gray,* 64 Cal. 5, [27 Pac. 788], the facts there presented this situation. The defendant Gray, who was the owner of a certain house in which plaintiff was wrongfully in the possession of certain rooms, caused the house to be unroofed and in so doing damaged the personal property of the plaintiff, who brought an action for the injury and obtained a verdict in her favor. The motion of the defendant for a new trial upon the ground of insufficiency of the evidence to sustain the verdict being denied, he appealed.

In disposing of the appeal this court said: "The vital question is, Can the plaintiff, upon these facts, maintain an action of trespass against the defendant? . . . All agree that at common law the plaintiff could not, upon the facts disclosed by this record, maintain any action whatever against the defendants. It is also conceded that the only change which has been made in the law relating to this subject is that made by the statute which, in this state as in many others, provides a summary remedy for forcible entry upon or into any real property. It is only as to the extent of the change wrought by this statute that there is any difference of opinion. . . . The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the Code of Civil Procedure, but it establishes the law of this state respecting the subjects to which it relates and its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice. (Code Civ. Proc. sec. 4.) An action of forcible entry would be a proceeding under the code and its provisions relating to that subject, in such a proceeding, would have to be liberally construed. The code has established the law of the state respecting that subject. It had provided a remedy and prescribed a course of procedure in cases of forcible entry.

And all statutes, laws, or rules on that subject heretofore in force in this state, whether consistent or not with the provisions of the code on the same subject, are repealed and abrogated. . . . The legislature has provided a remedy for forcible entry, no matter by whom made. But it has provided only one remedy. Before there was any legislation on the subject a person in the actual rightful or wrongful possession of real estate could maintain trespass against any one, *not having a right to enter,* for a forcible entry upon it. A person in the wrongful possession could not maintain an action against the owner, having a right to enter, for a forcible entry. But the statute gives a person even in the wrongful possession a right of action, and prescribes its form, against the owner having a right to enter, if he make a forcible entry. Neither expressly nor by necessary implication, does the statute give to a person in the wrongful possession the right to maintain any other than the action of forcible entry when such entry is made by the owner, having the right to enter. The legislature has provided a particular remedy for a forcible entry made under such circumstances, but we are unable to see upon what principle it can be held that another and different remedy, and one which did not exist at common law, and is not given by statute, is equally available in such a case. . . . As the evidence shows that the premises upon which the alleged trespass was committed were owned by the defendant, H. W. Gray, and that he was entitled to the immediate possession of the same, and that the plaintiff was in the wrongful possession thereof, the defendants' motion for a new trial should have been granted on the ground that the evidence was insufficient to justify the verdict.''

The other case to which we refer, and which reaffirms the doctrine of *Canavan* v. *Gray,* is the case of *Burnham* v. *Stone,* 101 Cal. 165, [35 Pac. 627]. There an action was brought by plaintiff against a number of defendants to recover damages for the alleged killing of the wife of plaintiff, Jennie Burnham. Epitomizing the facts as much as possible, it appears that one of the defendants, Levi P. Stone, was the owner of several tracts, according to the government survey, of a section of land in San Diego County, upon one subdivision of which a dwelling-house and other buildings were situated. In his absence certain persons named Goings took possession of

that portion of the land on which the buildings were located. Stone brought an action against them in the justice's court for forcible entry and detainer, but the complaint did not correctly state the subdivision of the section on which the buildings were located. They were on an entirely different subdivision. He had judgment for the restitution of the premises as described in the complaint and a writ of restitution was issued and delivered to a constable for service. The constable went to the premises upon which the buildings were situated and demanded that the Goings vacate them, which they refused to do. The constable returned later in the day with the defendants Levi P. Stone and James Stone and found Mrs. Burnham, the Goings, and others, in the house with the doors barred, and they still refused to vacate. The day following, the constable, the Stones, and others returned, and in an effort to execute the writ, or obtain possession, one of the constable's *posse* and one of the Goings, Mrs. Burnham, and another, were killed or mortally wounded. The jury returned a verdict against all the defendants, and James Stone appealed.

It appears that the court instructed the jury, at the request of plaintiff, that in going upon the land for the purpose of obtaining possession by force, or show of force, all the defendants were trespassers, and their entry unlawful, and because thereof, each defendant was liable for the killing of Mrs. Burnham, although the killing was not intended, contemplated, aided, abetted, or advised by him; that if he aided, abetted, or encouraged the unlawful entry upon the premises it was sufficient to fix his liability, and that such entry was unlawful unless the writ of possession covered or included the premises where the homicide occurred.

In passing upon the correctness of this instruction, this court said: "In view of a new trial and of the possibility that the writ does not refer to the buildings as a part of the description of the land, it becomes necessary to consider the instructions upon the supposition that the writ did not cover the premises from which it was attempted to evict the defendants in the writ.

"In such case the instructions were also erroneous. It is conceded that Levi P. Stone was the owner of the buildings and premises where the homicide occurred, and that he had a.

right to the possession at that time.  Mrs. Burnham made no claim that she was entitled to the possession.  Her mother and brother were in possession, and the record shows that when the constable, after demanding that they vacate the premises the morning of the day before the homicide, and being met with a refusal, returned in the afternoon and found Mrs. Burnham there with the others in the house and the doors barred.  She was also there when the constable and owner of the premises returned the next day with the *posse,* and at least aided and abetted her mother and brother in retaining possession.  Under these circumstances, if she had survived, she could not have maintained an action for assault and battery, or for any injury she might have sustained in an endeavor of the owner to obtain possession, even if the effort were forcible.

"In *Canavan* v. *Gray,* 64 Cal. 5, [27 Pac. 788], it was held that where the owner of real property having the right of possession makes a forcible entry, the person in wrongful possession cannot maintain an action of trespass, that the remedy provided by statute for a forcible entry is exclusive. . . .

" 'And the law, as generally adopted in the United States may be assumed to be substantially as laid down by Baron Parke.  If the owner of land wrongfully held by another enter and expel the occupant, but make use of no more force than is reasonably necessary to accomplish this, he will not be liable to an action of trespass *quare clausum,* nor for assault and battery, nor for injury to the occupant's goods, although, in order to effect such expulsion and removal, it becomes necessary to use so much force and violence as to subject him to indictment at common law for a breach of the peace, or under the statute for making forcible entry.' . . .

"The general ground upon which these authorities are based is that at common law trespass would not lie against the owner if he were entitled to the possession, as in such case the person in possession, being in wrongfully, could maintain no action against the owner, unless unnecessary force was used, and that the statutes of forcible entry and detainer having provided a remedy in such cases, that remedy is exclusive so far as the wrongful possessor is concerned; but the public being interested in preserving the peace may punish the owner

for resorting to force. *Canavan* v. *Gray*, 64 Cal. 5, [27 Pac. 788], proceeds upon this ground.''

After citing a number of authorities from different jurisdictions in support of this rule, including *Sterling* v. *Warden*, 51 N. H. 252, [12 Am. Rep. 80], where it is said: ''It is clearly the English law, and as we believe the strongly preponderating opinion of the American courts, that no civil action lies against a landlord for regaining with force the possession of the demised premises, unless there is an excess of force, and then only for such excess,'' our court then proceeds to an examination of the instructions referred to, and says: ''In the light of these authorities the instruction that the entry upon the premises by force, or show of force, was unlawful, and that if appellant aided and abetted such entry that he was liable for the death of Mrs. Burnham, though he did not aid, abet, advise, or encourage the actual killing, is erroneous. No liability for damages was created against any of the defendants for the entry upon the land, nor for the expulsion, or attempted expulsion of the occupants by force, unless more force or violence was used than was reasonably necessary, and no such qualification appears in the instructions given to the jury. It is quite true that appellant did not, in his answer, plead the ownership and right of entry to Levi P. Stone. The case was tried, however, without any apparent reference to the issues made by appellant's answer, and all the facts were given in evidence without objection or limitation. The court stated to the jury the substance of the complaint, that all the defendants, except Freeman, had answered denying the allegations of the complaint, and alleging that Mrs. Burnham and others acting with her first assaulted them; that they used no more force than was necessary to protect themselves from injury, and also alleged facts tending to justify themselves under the writ of restitution. The jury were expressly instructed that the question of the title to the land was not before them; that 'admitting that Stone was the owner of the land, and that Mrs. Goings was wrongfully in possession of it, this gave Stone, or any one acting with or for him, no right to enter upon the land by force, or show of force, and take possession of it, or exclude or remove Mrs. Goings or any one else from the land; and if you find that the defendants went upon the land in the manner and for the

purpose mentioned, their entry was unlawful, unless justified for other reasons, and the defendants would be liable for the consequences resulting therefrom.'

"Counsel for respondents suggest that the verdict being right upon the evidence, the judgment should not be reversed because of an erroneous instruction. That there are cases where the judgment should stand notwithstanding an erroneous instruction is not questioned; but where the erroneous instruction is such as to cut off a substantial defense on the merits the rule suggested can have no application. The case was not tried upon a theory which would justify this court in looking at the evidence to determine whether unnecessary force was used by defendants, and that became a vital question, assuming that the writ did not cover the premises upon which the entry was made by them."

It is clear from these authorities that one who is in possession of real property without right cannot maintain an action of trespass on his person—assault and battery—against the owner of the property, having a right to its possession, or against those, acting at his instance or in his behalf, who make a forcible entry thereon to dispossess him, where no more force than is necessary is used to make the entry effective.

The defense interposed by the defendants here was that the Mt. Diablo Company had a right of entry upon the property in question as the owner thereof, and that they entered upon it on behalf of such owner in the exercise of such right. In support of the existence of this alleged right of entry and as a basis for its exercise, they were entitled to prove ownership of the property in the Mt. Diablo Company if they could do so, and the trial court in refusing to permit them to do it prevented them from making a defense which they had pleaded and which, if proven as pleaded, would have been a valid defense to the recovery of any damages by the plaintiff, either exemplary or actual.

It is claimed by the respondent that the principle of law declared by the authorities to apply to actions for assault and battery for injuries growing out of the exercise of the right of entry by the owner of land to dispossess those who are trespassers upon it, applies only between conflicting claimants to land; that the rule can have no application in a case where a mere employee (such as it is claimed respondent was)

who had no interest in a contest between the rival claimants to the possession of land and is simply on the premises by virtue of his employment is injured by the owner in exercising the right of entry against his trespassing employer. We perceive no force in this contention. If the Mt. Diablo Company had the right of entry on the lands in question, the defendants, acting for it, in the exercise of that right were entitled to dispossess all persons who were on the premises, whether officers or employees of the Superior Sunset Company, and to exercise all necessary force to do so. They owed no different duty to the employees of the Superior Sunset Company who were upon the premises than they did to the officers of the company who were there. Their sole duty as to all occupants was to use no more force than was necessary to effectuate their removal and obtain full possession, and their responsibility to any of them injured thereby was only for any excessive use of force employed in doing so.

It is further insisted on behalf of respondent, as we understand his brief on rehearing, that the judgment should not be disturbed, as far as it awarded actual damages, for any error in the admission of evidence of ownership of the land by the Mt. Diablo Company, because it clearly appears from the evidence that the force and violence used by defendants in making the entry upon the premises, and as a result of which plaintiff was injured, was so excessive, unnecessary, and unreasonable that the judgment would have had to be the same, whether evidence of ownership had been admitted or not. This proposition is doubtless made upon the theory that this court might make the same alternative order on this appeal as did the district court of appeal. Undoubtedly this court could do so if a proper case was presented for such action. But, as was said in *Burnham* v. *Stone* (as to a similar suggestion that the judgment there should be affirmed notwithstanding the error committed by the trial court) when the effect of the action of the trial court is to cut off a substantial defense upon the merits, the rule invoked has no application. The case at bar was tried on an erroneous theory which, as in the Burnham case, would not justify this court in looking into the evidence to determine whether unnecessary force was used by defendants. Whether unnecessary force was used was a vital question under the pleadings in the

case, and its solution depended largely on whether the Mt. Diablo Company had a right of entry upon the premises or not. The defendants, acting for it, could only employ force to eject those in possession of it if it had. The court not only refused to permit defendants to show that the Mt. Diablo Company was the owner of the property with a right of entry thereon, but while refusing to permit the proof, actually made a finding against defendants on these matters. The court further found that the defendants were trespassers *ab initio* on the property on the night of the conflict; that the "said defendants had no right or business on said lands and were there in violation of law." Of course, under such a view, the trial court must necessarily have concluded that the use of any force employed by the defendants was entirely unwarranted and illegal; that the question as to the degree of force used by the defendants was a false quantity in the case, as the defendants had no right to be upon the land at all or employ any force whatever against those in possession. It is apparent that under these circumstances the case was tried upon an entirely erroneous theory, under which the defendants were precluded from making a defense whereby it could be properly determined by the court whether the force employed by them was necessary only or excessive.

As to the last point made by appellants relative to the exclusion by the court of evidence that the Superior Sunset people were armed with deadly weapons when they came upon the property in question and were so armed while in possession and up to the night of the entry by defendants.

We think such evidence should have been admitted in connection with all the other circumstances attending the dispute over the possession of the property. Under the authorities cited, even if the Mt. Diablo Company had a right of entry to dispossess the Sunset people as trespassers, still the defendants acting in its behalf would be justified in using only necessary force for that purpose and liable for any damages, the result of the use of excessive force. If the officers and the employees of the Superior Sunset Company entered into possession of the property armed, and remained armed, this fact would be proper to be taken into consideration in determining whether the defendants acted reasonably

and in good faith and without malice in making their entry upon the premises also armed, and as bearing upon the question whether they were using only reasonable force in doing so.

This disposes of the only points on the appeal made before the district court of appeal or on rehearing here.

As the trial court erred in rejecting the evidence offered by the defendants on the matters we have discussed, the judgment and order appealed from are reversed, and a new trial ordered.

Sloss, J., Shaw, J., Angellotti, J., McFarland, J., and Henshaw, J., concurred.