Dickinson v. Maguire.

Samuel Hunt petitioned the County Court of Siskiyou county for a discharge from his debts, under the Insolvent Law, and in his petition states his liabilities to amount to one thousand dollars, and his assets to three thousand five hundred dollars. Pierson and Hulbert, creditors named in petitioner's schedule, filed their opposition to the discharge of the petitioner from his debts, on the ground that the facts set up in the petition did not constitute and make petitioner an insolvent debtor. The Court below sustained the objection of the creditors, and refused to discharge the petitioner. Petitioner appealed.

No briefs on file.

---

## DICKINSON et al. v. MAGUIRE et al.

The action of forcible entry and detainer may be maintained in three cases : First, when the entry is forcible; second, when the entry is simply unlawful, and the detainer forcible; third, when the entry was lawful, and the holding-over forcible. But in all cases, there must be something of personal violence, either threatened or actual.

In an unlawful entry, there must be some ingredient of fraud or willful wrong on the part of the party making the entry.

The allegations of a complaint must be construed most strongly against the pleader. A complaint that alleges he is in possession in one place, and in another, avers that he is not, shows no cause of action.

APPEAL from the County Court of Calaveras County.

This was an action commenced in a Justice's Court to recover the possession of a quartz mining-claim. The complaint does not allege the value of the claim sued for; but avers that they are the legal owners, and that plaintiffs have legally held and occupied said mining quartz-claim uninterruptedly from the second day of October, A. D. 1856, down to the present time, to wit: the date hereof, with the exception of the unlawful acts of defendants hereinafter set forth, etc. The complaint then avers, " that defendants, well knowing, etc., wrongfully and illegally, without right or authority, or color of right or authority, unlawfully entered upon said premises," etc., and that they unlawfully detain the same from plaintiffs. Defendants, in their answer, deny the jurisdiction of the Justice's Court to try said case, be-

Dickinson *v.* Maguire.

cause the complaint does not aver the value of the claim.    On the trial in the Justice's Court, both parties admitted the value of the claim to be four thousand dollars ; and, on motion of defendant's counsel, the cause was dismissed by the Court for the want of jurisdiction.    Plaintiffs appealed to the County Court, where, on trial, it was again admitted, that the claim was of the value of four thousand dollars ; whereupon, defendants' counsel again moved the Court to dismiss the action for the want of jurisdiction.    The Court overruled the motion to dismiss, and held that the action was under the Forcible Entry and Detainer Law, and as such, the Court had jurisdiction, and ordered the case back to the Justice's Court for trial.    From which order, defendants appealed to this Court.

*Robinson & Beatty* for Appellants.

It is a well settled principle of law, that pleadings must be construed most strongly against the party pleading.

If the plaintiffs are the legal owners, and in the actual possession, etc., they cannot sue another to recover possession.    If it is answered that the latter part of the complaint shows that defendants unlawfully entered, etc., it is enough for us to say, that the last allegation contradicts the first.

This is, in reality, a case to settle boundaries between the parties, a subject over which a Justice's Court has no jurisdiction.

*Smith & Hardy* for Respondents.

The action of forcible entry is one defined by statute, and the action may be maintained on three distinct grounds.    First, " No person or persons shall make any entry into lands, tenements, or other possessions, but in cases where entry is given by law."    Second, " And in such case, not with strong hand or multitude of people."

To these definitions may be added the third proposition, which is, where a party has lawfully entered, but unlawfully holds over.    Then follows the penalty, " And if any person henceforth do to the contrary, he shall be fined."

Thus, it will be seen, that it is made a crime to enter into lands or other possessions, unless entry be given by law.

As to the first ground ; *a fortiori*, all the provisions of the act are made to apply to such a case.    Wood's Digest, 467, §§ 1, 2.

An entry without authority of law, is an unlawful entry, as contradistinguished from a forcible entry.    Atkinson *v.* Lester, 1 Scam., 409.

In another case in Illinois, the Supreme Court of that State has held that "the action of forcible entry, etc., may be maintained in this state in four cases : first, where there has been an unlawful or illegal entry upon the possession of another."

Whitaker *v.* Gautier, 3 Gill., 447; Revised Laws of Illinois, 1845, p. 256.

In the case of Frazier *v.* Hastler, 5 Cal., 159, the whole Court held, that if the "allegations of the complaint had only been of an unlawful entry, that the judgment could not have been sustained."

In the case of Moore & Moore *v.* Goslin, 5 Cal., 466, the Court said, " our Statute of Forcible Entries and Detainers provides a remedy for an unlawful entry, as well as a forcible entry."

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This case was lately decided, and upon a petition for a rehearing we are asked to review our decision.

The first section of the statute of this State, Wood's Digest, 467, prohibits—1. An unlawful entry into lands, tenements, or other possessions; And 2, A forcible entry when the right of entry exists. The same section then provides, in reference to both these cases, that " if any person do the contrary, and be thereof duly convicted, he shall be punished by fine." The second and third sections also clearly recognize the distinction between a forcible and unlawful entry.

The phrase, " other possessions," qualifies the preceding words, " lands and tenements." The possession must, therefore, be actual, peaceable, and exclusive, and not merely such possession as is deemed in law to follow the legal title. (House *v.* Keiser, October Term, 1857.)

It is clear that, under the provisions of the first, second and third sections, the entry may be simply unlawful and not forcible. What, then, is an unlawful entry? It is a peaceable entry, by fraud, or without color of title. It is not every peaceable entry, when the right of entry does not, in fact, exist, that constitutes an unlawful entry, within the meaning of the statute. There must be some ingredient of fraud or willful wrong on the part of the party making the entry. If we say that every entry is unlawful, when the party entering has not the strict legal right to do so, then we convert into a penal offence an act that may be done in good faith, and upon reasonable grounds of belief. A party may peaceably enter into the possession of premises to which he has a good *prima facie* right of entry, and honestly believes himself entitled so to enter. Yet if such an entry were deemed unlawful, as judged by our statute, the question, whether a party was guilty of a penal offence, would depend, not upon the intention, but solely upon the ultimate question of strict title.

If the first, second, and third sections, be construed by themselves, and without reference to other sections and the general spirit and purpose of the act, then it would follow that the

action for an unlawful entry could be maintained without the allegation or proof of any force whatever. But to ascertain the true intent and meaning of the Legislature, we must look to the whole statute, taken and construed as an entirety.

By the ninth section it is provided, that "on the trial the complainant shall only be required to show, in addition to the forcible entry or detainer complained of, that he was peaceably in actual possession at the time of a forcible [or unlawful] entry, or was entitled to the possession of the premises at the time of a forcible holding-over."

This provision embraces all the cases intended by the statute; and the words "or unlawful," which are inserted in brackets, were no doubt accidentally omitted in drawing the bill. The case of a "forcible detainer" is clearly distinguished from the case of a "forcible holding-over."

Putting these different provisions together, and looking to the spirit and scope of the act, the action may be maintained in the following cases :

1. When the entry is forcible.

2. When the entry is simply unlawful and the detainer forcible.

3. When the entry was lawful and the holding-over forcible.

The thirteenth section declares what shall constitute a forcible holding-over.

As to what shall constitute a forcible detainer, it may be difficult to define in language so exact and certain as to exclude all room for reasonable doubt. The circumstances of different cases are so various as to make this impossible. But it may be stated in general terms that there must be something of personal violence, either threatened or actual. If, when the possession of the premises is demanded of the party, he, by word or act, look or gesture, gives reasonable ground to apprehend the use of force to prevent the rightful claimant from obtaining peaceable possession, this would be sufficient. It is not necessary for the claimant to wait until actual violence is resorted to.

It would seem that, in most cases, it would be no difficult matter before the commencement of the suit, to put the question as to whether the detainer be forcible or not, in a shape susceptible of easy proof. A clear and distinct demand of the possession, accompanied with an offer to take peaceable possession, by the claimant, would put the party making the unlawful entry at once in the wrong, if he refused peaceably to yield up the possession. There should be something to show that the claimant cannot obtain peaceable and easy redress by his own act, in such a case, before he can resort to this severe remedy. A party may, in some instances, enter into premises without color of title, and with no design to occupy adversely, and be willing to give up the possession when demanded. If the party making an unlawful

entry, will peaceably quit the premises when demanded, he will be only responsible for a trespass, and not for a forcible detainer.

There is, in the complaint in this case, no allegation of a forcible entry, or of a forcible detainer. The plaintiffs allege in the beginning of the complaint, that they are "the legal owners and in the actual possession of" the claim described. In a subsequent portion of the complaint, they allege that "they have legally held and occupied said mining quartz-claim, uninterruptedly, from the second day of October, A. D. 1856, down to the present time, with the exception of the wrongful acts of the defendants, hereinafter set forth." They then allege an unlawful entry and detainer. The allegations of the complaint must be construed most strongly against the pleader; and, as he alleges in one place, that he is in the actual possession of the premises, and in another, that he is not, the complaint shows no cause of action, even if we concede that an action for a merely unlawful entry and detainer, without any allegation or proof of a forcible detainer, could be supported.

In these actions, when the title becomes involved, either by the showing of the plaintiff or by the written and verified answer of the defendant, the justice must certify the pleadings to the District Court. (Code, §§ 5, 571, 581.) When the District Court obtains jurisdiction of the case, what relief will that Court administer? Will it depend upon the *merits* of the case as *shown upon the trial?* Suppose the defendant, by his answer, falsely sets up title. Can he, by his own wrong, avoid the penalties imposed by the act? These are important questions, which do not arise in this case, and about which we express no opinion.

The construction that we have given the act, would seem to be supported, not only by the language, the context, and the nature of the remedy provided, but also by the history of the action as originally adopted in England.

At common law, a man disseized of his lands, might lawfully regain the possession thereof by force. In doing this, he might be guilty of a breach of the peace, and be responsible criminally; but the party turned out by force, had no remedy to regain possession. "But this indulgence of the common law," says Hawkins, "having been found by experience to be very prejudicial to the public peace, by giving an opportunity to powerful men, under the pretence of feigned titles, forcibly to eject their weaker neighbors, and also by force to retain their wrongful possessions, it was thought necessary, by many severe laws, to restrain all persons from the use of such violent methods of doing themselves justice." 2 Pleas of the Cr., ch. 64, p. 29.

The first act of Parliament was that of 2 Ed. III, which did not restore the party injured to his possession. The next was that of 5 Rich. II, ch. 7, § 6, which provides that "none from hence-

forth make any entry into lands and tenements, but in case where entry is given by law; and in such case, not with strong hand, nor with multitude of people, but only in a peaceable manner. And if any man, from henceforth, do the contrary, and thereof be duly convict, he shall be punished by imprisonment of his body, and thereof ransomed at the King's will."

It will be seen, that the first section of our statute, is almost a literal copy of this sixth section of the act of Parliament. But, as this statute did not provide any speedy remedy, the act of 15 Rich. II, ch. 2, was passed, which empowered the justices of the peace to enforce the previous act, in cases of *forcible entry.* Under the provisions of these several acts of Parliament, there was no remedy provided for a forcible detainer.

"But this statute," says Hawkins, "being likewise very defective in many respects, as in not giving any remedy against those who were guilty of a forcible detainer after a peaceful entry, nor even against those who were guilty of both a forcible entry and a forcible detainer, if they were removed before the coming of a justice of the peace; and in not giving the justices of the peace any power to restore the party injured by such force, to his possession," the statute of 8 Hen. VI, ch. 9, provides, that the injured party should be restored to his possession, either in the case of a forcible entry or a forcible detainer. The statute of 31 Eliz., ch. 11, made some further provisions, still recognizing the distinction between a forcible entry and a forcible detainer, and regarding both as offences. Some further provisions were made by the statute of 21 James, ch. 15.

It will be seen, that our statute is but a combination in one act of the substantial provisions found in the several acts of Parliament. By the British statutes, a mere unlawful entry or unlawful detainer, not accompanied by force, was not deemed an offence. Force was required in both cases.

Judgment reversed, and plaintiff's case dismissed.