[L. A. No. 29433.   In Bank.   June 27, 1969.]

SALVATORE DALUISO, as Executor, etc., Plaintiff and Respondent, v. HARLEY R. BOONE, Defendant and Appellant.

Wilson, Wilson & Borror and William H. Wilson for Defendant and Appellant.

Falcone & Falcone and A. V. Falcone for Plaintiff and Respondent.

SULLIVAN, J.—Defendant appeals from a judgment entered after a nonjury trial awarding plaintiff Ferdinando Daluiso, now deceased, damages for personal injuries sustained as a result of defendant's forcible entry onto certain

land on which plaintiff resided. The incident arose out of a dispute over a boundary line and defendant's removal of a fence which he claimed was actually located on his property. The principal question raised before us is whether the trial court erred in failing to determine whether or not defendant had title to that portion of the land on which the fence was located. According to defendant's theory, a determination of this issue in his favor would have simultaneously established his right to recover such land by the use of reasonable force and would have constituted a complete defense to plaintiff's action.

We hold in the instant case that quite apart from any remedy available in a summary action of forcible entry and detainer (Code Civ. Proc., § 1159 et seq.), a person in peaceable possession of real property may recover, in an action sounding in tort, damages for injuries to his person and goods caused by the forcible entry of one who is, or claims to be, the lawful owner or possessor and that the forcibly entering defendant's title or right of possession is no defense to such action. As we explain, *infra,* the question of defendant's title in the case before us was irrelevant and the trial court did not err in declining to determine such question. We therefore affirm the judgment.

By a land patent dated February 7, 1918, Orazio Finochiaro acquired from the United States Government a 40-acre parcel of land located in what is now known as the Reche Canyon area of Riverside County. Finochiaro completely fenced the property with wire fences on the north, west and east sides and erected a partial fence on the south side.

In June 1920, Finochiaro and his wife conveyed the property to plaintiff, Ferdinando Daluiso.[1] Plaintiff named the property Melody Ranch, constructed a residence on it and planted an orchard of almond trees. Although he made other improvements on the ranch he did not change the location or direction of the fences surrounding the property.

In 1934, plaintiff and his wife, Maria, for the nominal consideration of $10, conveyed the Melody Ranch to their son, Salvatore, but nevertheless continued to reside there. Salvatore testified that plaintiff was the custodian of the ranch when Salvatore was absent and that plaintiff had his permission to live on the ranch rent free for life. Salvatore erected

---

[1] Ferdinando Daluiso, the original plaintiff herein, died during the pendency of this appeal and his executor, Salvatore Daluiso, was substituted as respondent. For the sake of clarity Ferdinando will be referred to as ''plaintiff'' in this opinion.

two additional houses on the ranch and made other substantial improvements, but did not change in any way the fences surrounding the property.[2]

In 1946 defendant acquired the property completely surrounding Melody Ranch on all four sides. The Daluisos, however, at all times had a right of access to, and egress from, their land. During all of this time no changes were made in the fences.

In 1955 Woodson, an adjoining neighbor of defendant, arranged with the latter to have a survey made of their respective lands. Woodson employed one Pump, a licensed civil engineer, for that purpose. Defendant asked Salvatore whether he would like to share the cost of the survey and the latter indicated that he would. Pump surveyed the land and completed his work in early 1956.[3] The results of his survey showed, insofar as is here relevant, that the fence bordering the west side of Melody Ranch was actually located on defendant's property. Pump informed Salvatore that Melody Ranch contained 39.57 acres "more or less." This determination conflicted with the description of 40 acres in the land patent from the United States Government to Finochiaro.[4] On April 7, 1956, Pump sent Salvatore a bill for $200 as his share of the cost of the survey and Salvatore paid it in full.

After the results of the survey were made known to both Salvatore and defendant they had several conversations regarding the relocation of the west fence of Melody Ranch to conform to Pump's findings. Defendant claimed that he and Salvatore reached an agreement whereby Salvatore was to move the fence to a position east of where it was then located. Salvatore denied this.

On March 18, 1961, two employees of defendant, at the latter's direction and under his personal supervision, pro-.

[2]On December 9, 1958, Salvatore conveyed the entire ranch to himself and his wife, Nita, as joint tenants. The land was so held at the time plaintiff's cause of action arose.

[3]It is unnecessary to the decision herein to set out in detail the methods Pump used in making his survey, the problems he had in having it recorded or the specific findings he made with regard to the boundaries of Melody Ranch. Those details may be found in *Daluiso* v. *Boone* (1969) 269 Cal.App.2d 253, 256-257 [75 Cal.Rptr. 287].

[4]Since the trial of the instant action the appeal in *Daluiso* v. *Boone, supra,* 269 Cal.App.2d 253, has been decided in favor of Salvatore Daluiso. That action was one to quiet title by Salvatore against Boone, in which the court found that the fences here in dispute indicated the correct boundaries of Melody Ranch and that the findings of Pump's survey were inaccurate. The court quieted title to Melody Ranch in Salvatore and his wife. The results of that action have no effect on this appeal as will be explained in this opinion, *infra.*

ceeded to remove a section of the fence running along the west line of Melody Ranch. It was apparently defendant's intention to relocate and realign the fence to conform with Pump's survey. No previous notice of this action was given either Salvatore or plaintiff.

Shortly after defendant's employees began removing the fence, plaintiff came upon the scene and asked defendant what was occurring. Upon being informed of defendant's intentions, plaintiff, then 85 years old and ailing with a heart condition, requested defendant to order the work stopped. When defendant refused, a heated verbal exchange between plaintiff and defendant ensued during the course of which plaintiff became very excited and upset. However, at no time did defendant strike plaintiff or touch him in any manner. As the court found, plaintiff repeatedly requested defendant during the course of the argument to order his employees to desist from their acts and to settle any controvery concerning the location of the fence by legal means. As a result of all this, plaintiff suffered emotional distress followed by physical illness.

Having been informed of the above altercation, Salvatore arrived at the scene a short time later. After attempting without success to persuade defendant to cease removing the fence, Salvatore summoned a deputy sheriff. Further efforts to persuade defendant to discontinue the work on the fence proved to be fruitless. The instant action followed.

Plaintiff's complaint, entitled, ''Complaint for Damages for Personal Injuries Arising out of Trespass to Real and Personal Property,'' essentially stated a cause of action for the tort of intentional infliction of mental distress, and alleged in words and substance: that plaintiff's son and daughter-in-law were the owners in fee of Melody Ranch and resided thereon as did plaintiff and his wife; that the land was developed with ''buildings, roads and fences, including both boundary and property line fences''; that on March 18, 1961, defendant forcibly entered the land and tore down fences; ''that plaintiff, acting on behalf of his son and his son's wife, as their said agent and representative, in protection of their ownership of the said land and the said property thereon, and also acting on his own behalf in protection of his residence and occupancy on said land,'' repeatedly requested defendant to cease; that as a result of defendant's actions plaintiff suffered ''physical, mental and nervous shock''; and that defendant's acts were done intentionally with the knowl-

edge that they were substantially certain to produce plaintiff's injuries. Plaintiff prayed for compensatory and exemplary damages.

Defendant's answer admitted: that Salvatore and Nita Daluiso owned real property described in the answer by metes and bounds; that plaintiff and his wife resided on portions of that property; that on March 18, 1961, defendant "went upon that portion of his [own] real property lying immediately west of the real property hereinbefore described, and undertook to remove a fence then located upon his said real property"; and that a verbal controversy arose among defendant, plaintiff and Salvatore concerning defendant's actions. The answer denied all the other allegations of the complaint.

The court found, by reference to the allegations of the complaint: that Salvatore and Nita Daluiso were the owners of Melody Ranch; that the land was developed with both boundary and property line fences; that plaintiff resided on the land and acted as the agent and representative of Salvatore and Nita regarding the land; that plaintiff suffered from hypertensive arteriosclerotic heart disease prior to March 18, 1961, and that defendant knew of such condition; that defendant forcibly entered Melody Ranch and tore down fences thereon; that plaintiff was acting on behalf of his son and daughter-in-law and also in his own behalf in protection of his residence and occupancy on the ranch when he attempted to prevent defendant's actions; that plaintiff suffered the injuries alleged in the complaint, the proximate cause of which was defendant's acts; that defendant's actions were taken forcibly with the intent of unlawfully entering Melody Ranch; and that defendant knew that his conduct was substantially certain to produce plaintiff's injuries. The court made no finding as to whether Salvatore or defendant had title to the property on which the west fence was located.[5] Plaintiff was awarded compensatory damages in the sum of $15,000.

---

[5]While the court found that Melody Ranch was "developed with . . . roads and fences, including both boundary and property line fences and other fences . . . ." this does not constitute a finding that such fences were on the true boundary of Melody Ranch. The finding indicates only that the ranch described in the complaint was improved with fences which were designated as indicators of the boundary lines. The court did not intend to indicate by its finding that such fences correctly specified the' boundaries of Melody Ranch. This is made clear from the remarks of the trial judge that, "The issue here is in part predicated under these pleadings on a tort which has no relationship whatever to the legal boundary

Defendant makes two contentions on appeal: First, relying on *Canavan* v. *Gray* (1883) 64 Cal. 5 [27 P. 788], and *Walker* v. *Chanslor* (1908) 153 Cal. 118 [94 P. 606, 126 Am.St.Rep. 61, 17 L.R.A. N.S. 455], he asserts that the trial court erred in failing to determine whether title to the land on which the fence was located was in Salvatore or in defendant since if defendant had title, he had a privilege to recover his land by the use of reasonable force. Secondly, he contends that even if title is not a defense, plaintiff was nevertheless required to prove that he was in possession of Melody Ranch at the time the cause of action arose and that plaintiff failed to meet this burden of proof.[6]

To give these issues proper consideration, we must first direct our attention to the origin and development of the right to use force in order to recover possession of land. "Under the ancient common law it is supposed that one entitled to the possession of land was privileged to enter and use such force, short of death or serious bodily harm, as reasonably appeared to be necessary to the repossession." (1 Harper and James, The Law of Torts (1956) § 3.15, p. 255.) Thus, if a forcibly entering defendant established his title or right to possession, it was a complete defense to an action by a plaintiff in possession of the land for injuries to the latter's person or goods arising out of the defendant's forcible entry; provided that the defendant used only reasonable force in

line between these two parcels of property; and the gravamen of the tort being violation of individual rights which are as of then fixed by the fence line and not by the boundary line.'' He subsequently stated that he did not ''intend in this action to make any declaration of who has title to what—that is not before me. It is not pleaded. It is not at issue and has nothing to do with this piece of litigation.'' We do note, however, that the court admitted the testimony of Pump as to the methods he used in making his survey and as to the results he obtained.

[6]Defendant does not contend in his briefs either that his conduct did not constitute the tort of intentional infliction of mental distress or that the damages awarded were excessive. Further, the record discloses that defendant failed to raise these issues by a motion for new trial. Defendant's terse and generalized claim made for the first time at oral argument, urging the insufficiency of the evidence utterly fails to satisfy his burden in this respect particularly when his briefs are silent on the point. Pertinent here are the remarks of the court in *Davis* v. *Lucas* (1960) 180 Cal.App.2d 407, 409 [4 Cal.Rptr. 479]: ''The appellate court starts with the presumption that the evidence sustains each finding of fact [citations], and the burden rests upon appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' [Citations.] To this end appellant must set forth in his brief all material evidence upon the point, not merely his own proofs [citations]; . . .'' Nevertheless our examination of the record satisfies us that the finding of the commission of the tort is sustained by the evidence and that the award made is not excessive. We therefore restrict our discussion to the two contentions of defendant noted above.

regaining possession. It soon became obvious, however, that allowing one to recover his land by force contributed greatly to breaches of the public peace and gave "an opportunity to powerful men, under the pretence of feigned titles, forcibly to eject their weaker neighbors, and also by force to retain their wrongful possession. . . .". (*Dickinson* v. *Maguire* (1858) 9 Cal. 46, 50, quoting from 2 Hawkins, Pleas of the Crown, ch. 64, p. 29.)

As a result, the penal statute of 5 Richard II was enacted in 1381 to provide that "none from henceforth make any entry into lands and tenements, but in case where entry is given by law; and in such case, not with strong hand, nor with multitude of people, but only in a peaceable manner. And if any man, from henceforth, do the contrary, and thereof be duly convict, he shall be punished by imprisonment of his body, and thereof ransomed at the King's will." By the imposition of criminal sanctions the statute was intended to discourage resort to self-help in the settlement of disputes over the right to possession of land. In furtherance of that policy, the English courts later determined that a cause of action in tort should lie for personal injuries (*Newton* v. *Harland,* 1 Mann & G. 644, 133 Eng.Rep. 490 [Common Pleas 1840]) or for injuries to personal property (*Beddall* v. *Maitland* [1881] 17 Ch.Div. 174) arising out of the entry even if the forcibly entering defendant was the true owner of the land or entitled to immediate possession thereof. The courts reasoned that since "the act [of forcible entry] is directly prohibited, the act itself is made unlawful," (*Newton* v. *Harland, supra,* 1 Mann & G. at p. 667, 133 Eng.Rep. at p. 499) the consequences of an unlawful act should attach thereto to the extent "that there is a good cause of action whenever in the course of a forcible entry there has been committed by the person who has entered forcibly an independent wrong, some act which can be justified only if he was in lawful possession."[7] (*Beddall* v. *Maitland, supra,* 17 Ch.Div. at pp. 189-

[7]Between the time of the enactment of the statute of 5 Richard II in 1381 and the decision in *Newton* v. *Harland* in 1840, the English law was apparently unsettled with respect to whether the policy of the statute should be extended beyond the imposition of criminal penalties for a forcible entry. As noted by Erskine, J. in *Newton*: "It is remarkable that a question so likely to arise should never have been directly brought before any of the courts sitting in Banc until it was brought before this court in the present case." (*Newton* v. *Harland, supra,* 1 Mann & G. at p. 666, 133 Eng. Rep. at p. 498.) However, even when it was finally determined that the plaintiff in peaceable possession of the land should have the right to an action sounding in tort, the courts refused to allow a plaintiff in peaceable but wrongful possession to recover damages for

190.) Thus, the policy against self-help in land disputes was implemented by allowing recovery in tort by a plaintiff in peaceable possession of the land against a forcibly entering defendant irrespective of the latter's title or right to immediate possession.

The *Newton* and *Beddall* 'cases were overruled in 1920 by *Hemmings* v. *Stoke Poges Golf Club, Ltd.*, 1 K.B. 720, 738. However, the rationale of the former cases quickly took root in American case law and the American decisions were not affected by the holding of the Court of Appeal in *Hemmings*. Eminent authorities on the law of torts indicate that the majority of American states have construed their statutes of forcible entry, both penal and civil, in such a manner as to abrogate the common law privilege to use force in the recovery of possession of land and have held that a plaintiff who proves his peaceable possession of the land at the time of the defendant's forcible entry may recover, in an action sounding in *tort*, damages for injuries to his person or goods arising out of the entry. (1 Harper and James, *op.cit. supra*, at § 3.15, p. 258; Prosser, Law of Torts (3d ed. 1964) § 23, p. 125. See e.g., *Mason* v. *Hawes* (1884) 52 Conn. 12, 16 [52 Am.Rep. 552]; *McIntyre* v. *Murphy* (1908) 153 Mich. 342, 346-347 [116 N.W. 1003, 1004-1005, 15 Ann.Cas. 802]; *Lobdell* v. *Keene* (1901) 85 Minn. 90, 101 [88 N.W. 426, 430]; *Strauel* v. *Lubeley* (1915) 186 Mo.App. 638, 643-644 [172 S.W. 434, 435-436]; *Mosseller* v. *Deaver* (1890) 106 N.C. 494, 496-498 [11 S.E. 529, 530, 8 L.R.A. 537, 19 Am.St.Rep. 540]; *Weatherly* v. *Manatt* (1919) 72 Okla. 138, 139-140 [179 P. 470, 471]; *Walgreen Co.* v. *Walton* (1932) 16 Tenn.App. 213, 229 [64 S.W.2d 44, 53]; *Ray* v. *Dyer* (Tex.Civ.App. 1929) 20 S.W.2d 328, 330; *Buchanan* v. *Crites* (1944) 106 Utah 428, 436 [150

the entry alone; they required some independent wrong to his person or goods before he could secure a recovery. Fry, J. stated the rule thusly: "The effect of the statute is this, that when a man is in possession he may use force to keep out a trespasser; but, if a trespasser has gained possession, the rightful owner cannot use force to put him out, but must appeal to the law for assistance. And the result of the cases appears to me to be this, that, inasmuch as the possession of the Defendant [the party in peaceable but wrongful possession] was unlawful, he can recover no damages for the forcible entry of the Plaintiff. He can recover no damages for the entry, because the possession was not legally his, and he can recover none for the force used in the entry, because, though the statute of Rich. 2 creates a crime, it gives no civil remedy. But, in respect of independent wrongful acts which are done in the course of or after the forcible entry, a right of action does arise, because the person doing them cannot allege that the acts were lawful, unless justified by a lawful entry; and he cannot plead that he has a lawful possession." (*Beddall* v. *Maitland, supra*, 17 Ch. Div. at p. 188.)

P.2d 100, 103]. See also *Whitney* v. *Brown* (1907) 75 Kan. 678, 681-683 [90 P. 277, 278, 11 L.R.A. N.S. 468, 12 Ann.Cas. 768]; Rest.2d Torts, § 185, com. a.)

A minority of states, however, have taken the view that their forcible entry statutes have not deprived a defendant with the right to immediate possession of land of his common law privilege to use reasonable force to regain possession thereof. Representative of this view is the following language from *Shorter* v. *Shelton* (1945) 183 Va. 819, 826-827 [33 S.E.2d 643, 647]: "It will be observed that the statute [of forcible entry] does not in express terms deprive the owner of the common-law right to take possession by reasonable force of premises to which he may be entitled. While its purpose is to prevent violence and disturbances which are likely to follow when one entitled to the lawful possession of premises undertakes to assert his rights by force, [citation] the right of action is civil in character, [citation] and the result, if the plaintiff prevails, is merely to restore the possession to one from whom it has been forcibly taken, or to give possession to one from whom it is being unlawfully withheld. 'The judgment has only the effect of placing the parties *in statu quo.*' [citations.]" (See 1 Harper and James, *op.cit. supra,* at § 3.15, p. 258; Prosser, *op.cit. supra,* at § 23, p. 125 and cases collected therein.)

The courts which have adopted the majority view have done so on the rationale that their forcible entry statutes expressed a policy intended to discourage self-help in the settlement of disputes over possession of land and to encourage resort to the courts in all such matters.[8] On the basis of that policy they have determined that the plaintiff's failure to proceed under the forcible entry statute was not reason to deny him the right to proceed in tort for injuries arising out of the forcible entry even if title to the land was in the defendant. The

---

[8] "It is urged that the owner of real estate has a right to enter upon and enjoy his own property. Undoubtedly, if he can do so without a forcible disturbance of the possession of another; but the peace and good order of society require that he shall not be permitted to enter against the will of the occupant, and hence the common law right to use all necessary force has been taken away. He may be wrongfully kept out of possession, but he cannot be permitted to take the law into his own hands and redress his own wrongs. The remedy must be sought through those peaceful agencies which a civilized community provides for all its members. A contrary rule befits only that condition of society in which the principle is recognized that

He may take who has the power,
And he may keep who can."

(*Reeder* v. *Purdy* (1866) 41 Ill. 279, 285.)

Supreme Court of Vermont expressed the policy in these words: "[H]ad the present plaintiff elected to have proceeded under the statute, there can be no doubt, he might have subjected the defendants to punishment by way of fine, obtained restitution of the possession, and sustained an action of trespass, and recovered three fold damages for the expulsion and detention. And if such be the undeniable rights of the parties, under the statute, it is difficult to see, why, if the party waive all penalty under the statute, he may not sustain trespass *qu. cl.* against the defendants, the same as against any other wrong doers. Their [defendants'] right to possession gave them no more right to enter in that manner [by force], than if they had been mere strangers. . . ." (*Dustin* v. *Cowdry* (1851) 23 Vt. 631, 639-640.)

Over a hundred years ago the Supreme Court of Illinois recognized the incongruity of a statutory policy intended to discourage the use of self-help and a judicial policy which encouraged self-help by allowing title to be a complete defense to an action brought in tort for injuries arising from a forcible entry: "The reasoning upon which we rest our conclusion lies in the briefest compass, and is hardly more than a simple syllogism. The statute of forcible entry and detainer, not in terms, but by necessary construction, forbids a forcible entry, even by the owner, upon the actual possession of another. Such entry is, therefore, unlawful. If unlawful it is a trespass, and an action for the trespass must necessarily lie. It is urged that the only remedy is that given by the statute—an action for the recovery of the possession. But the law could not expel him who has entered if his entry was a lawful entry, and if not lawful all the consequences of an unlawful act must attach to it. The law is not so far beneath the dignity of a scientific and harmonious system that its tribunals must hold in one form of action a particular act to be so illegal that immediate restitution must be made at the costs of the transgressor, and in another form of action that the same act was perfectly legal and only the exercise of an acknowledged right. . . .

"We state then, after a full examination of this subject, that in our opinion the statutes of forcible entry and detainer should be construed as taking away the previous common law right of forcible entry by the owner, and that such entry must be therefore held illegal in all forms of action." (*Reeder* v. *Purdy, supra,* 41 Ill. 279, 284-286; see also *Buchanan* v. *Crites, supra,* 106 Utah 428, 436 [150 P.2d 100, 103]; annot. (1945) 154 A.L.R. 181.)

It is in the light of these principles of English and American law that we now attempt to examine and evaluate the present state of the law of California. Since 1850 we have had a forcible entry statute which, although civil in nature, is patterned after the statute of 5 Richard II. (See Stats. 1850, ch. 141, p. 425.) The provisions are presently contained in the Code of Civil Procedure[9] wherein section 1159 defines a forcible entry,[10] section 1172 states the elements of the plaintiff's cause of action to be a showing of forcible entry by the defendant and peaceable possession of the land by the plaintiff at the time of the defendant's entry,[11] and section 1174 provides that the plaintiff may recover possession of the land and damages occasioned to him by the defendant's entry and that the court, in its discretion, may treble the award of damages.[12] ■ The courts of this state have long recognized that the purpose of these statutes was "to secure a *judicial* adjustment of differences [concerning the right to possession of property] and thus prevent the parties themselves from redressing or attempting to redress their own wrongs which is likely to lead to serious wrongs against the public or society." (Original italics.) (*San Francisco & Suburban etc. Soc.* v. *Leonard* (1911) 17 Cal.App. 254, 262 [119 P. 405]; see also *Jordan* v. *Talbot* (1961) 55 Cal.2d 597, 604 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161]; *Dickinson* v. *Maguire, supra,* 9 Cal. 46, 50.) ■ To promote this end it has been consistently held that it is no defense to an action brought

---

[9]Hereafter, unless otherwise indicated, all section references are to the Code of Civil Procedure.

[10]Section 1159 provides: "Every person is guilty of a forcible entry who either: (1) By breaking open doors, windows, or other parts of a house, or by any kind of violence or circumstances of terror enters upon or into any real property; or (2) Who, after entering peaceably upon any real property, turns out by force, threats, or menacing conduct, the party in possession."

[11]Section 1172 provides in part: "On the trial of any proceeding for any forcible entry or forcible detainer, *the plaintiff shall only be required to show*, in addition to the forcible entry or forcible detainer complained of, *that he was peaceably in the actual possession* at the time of the forcible entry, or was *entitled to the possession* at the time of the forcible detainer." (Italics added.)

[12]Section 1174 provides in part: "If upon the trial, the verdict of the jury, or if the case be tried without a jury, the findings of the court be in favor of the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises; . . . The jury or the court, if the proceedings be tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, . . . alleged in the complaint and proved on the trial, . . . Judgment against the defendant guilty of the forcible entry . . . may be entered in the discretion of the court either for the amount of the damages and the rent found due, or for three times the amount so found. . . ."

under the forcible entry statute that the defendant has the title or the right to possess the land. (*Kerr* v. *O'Keefe* (1903) 138 Cal. 415, 421 [71 P. 447]; *Giddings* v. *'76 Land & Water Co.* (1890) 83 Cal. 96, 100-101 [23 P. 196]; *Voll* v. *Hollis* (1882) 60 Cal. 569, 573.)

However, the courts of this state long ago determined, contrary to the rationale of the *Newton* and *Beddall* cases, that the remedy provided by the forcible entry statute was an exclusive remedy for a person in wrongful possession of land. This result was accomplished by the holding that the ancient common law rules (i.e., the rules prior to the statute of 5 Richard II) were applicable in this state except to the extent that they were abrogated by the forcible entry statute. Thus the rule emerged, that, except in actions brought under the forcible entry statute, a forcibly entering defendant who established his title or right to possession of the land, had a complete defense to an action in tort by a plaintiff in peaceable possession for injuries to person or goods arising out of the entry.

This doctrine was announced in *Canavan* v. *Gray, supra,* 64 Cal. 5. In that case the plaintiff was in peaceable but wrongful possession of a house owned by the defendant. The defendant's employees entered the structure and unroofed it, causing damage to the plaintiff's property. The plaintiff brought an action of trespass and this court reversed a judgment in her favor stating: ''In this State the plaintiff, in an action of forcible entry, may recover the damages occasioned thereby together with a judgment for the restitution of the premises. The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the Code of Civil Procedure, but it establishes the law of this State respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice. (Code Civ. Proc., § 4.) An action of forcible entry would be a proceeding under the Code and its provisions relating to that subject, in such a proceeding, would have to be liberally construed. The Code has established the law of the State respecting that subject. It has provided a remedy and prescribed a course of procedure in cases of forcible entry. And all statutes, laws, or rules on that subject heretofore in force in this State, whether consistent or not with the provisions of the Code on the same subject, are repealed and abrogated. (Code Civ. Proc., § 18.)

"It is doubtless the duty of courts, in actions of forcible entry, to construe the provisions of the code relating to that subject so as to suppress the mischief and advance the remedy, that is, the *remedy given by the statute*. The legislature has provided a remedy for forcible entry, no matter by whom made. But it has provided only one remedy . . . But the statute gives a person even in the wrongful possession a right of action, and prescribes its form, against the owner having a right to enter, if he makes a forcible entry. Neither expressly nor by necessary implication does the statute give to a person in the wrongful possession the right to maintain any other than the action of forcible entry when such entry is made by the owner, having the right to enter. The legislature has provided a particular remedy for a forcible entry made under such circumstances, but we are unable to see upon what principle it can be held that another and different remedy, and one which did not exist at common law, and is not given by statute, is equally available in such a case." (Original italics.) (64 Cal. at pp. 7-8.)

The rule set out in *Canavan* was applied in *Walker* v. *Chanslor, supra,* 153 Cal. 118. There, employees of an oil company were in peaceful possession of land in Kern County. Plaintiff, one of the employees, was shot by defendants, employees of a mining company, who had forcibly entered the land armed with weapons. In an action for assault and battery, plaintiff was awarded damages upon findings that he was in peaceful possession and that the defendants had forcibly entered. The court refused to admit evidence offered by the defendants that their employer had title to the property. On appeal this was held to be error and the judgment was reversed on the following reasoning: "[I]t will be observed that this action is not brought under the provisions of the code relative to forcible entry. It is an action brought purely for assault and battery, and is subject to the common-law rule as to such actions,[13] which is that it is a complete defense to

---

[13]The court determined that the common law rule was applicable in this state by reliance on *Canavan*. Its reasoning was as follows: "The rule obtaining in this state . . . is the rule of the common law. At common law the owner of real estate had the right to enter upon his property to expel by force an intruder and in doing so was entitled to use all the force necessary to secure possession. Having the right of entry and exercising it, he would not be subject to an action for tort for damages resulting either from his entry or from any assault upon or physical injury sustained by one in wrongful possession, provided he used no more force than was necessary to dispossess him. The trespasser could only maintain an action for damages against the owner, provided an excessive use of force was employed in making the entry or dispossess-

498

their maintenance, either for exemplary or actual damages, if it be shown that the injuries claimed to have been sustained by one wrongfully in possession, were sustained while the owner of the property was exercising a right to the possession of his land, although using force to obtain such possession, if no more force was employed than was necessary to accomplish it.'' (153 Cal. at p. 127.)

As we said earlier, defendant seeks to bring himself within the rule of *Canavan* and *Walker* by alleging that he had title to the property on which the fence was located and, therefore, that he was privileged to use reasonable force to recover possession of his property. He thus contends that it was error for the trial court to fail to make a finding as to who had title to the property.

█ The legislative intent in enacting the forcible entry statute was to establish a summary procedure for the restitution of real property and thereby to promote the settlement of disputes over possession by legal means rather than by self-help. █ In order to deter breaches of the peace the Legislature provided in section 1174 that a plaintiff in a forcible entry proceeding may recover damages occasioned by the entry and that the court may in its discretion treble such damages. █ It has been held that under section 1174 the plaintiff may recover all damages which ''are the natural and proximate result of the forcible entry. . . .'' (*Anderson* v. *Taylor* (1880) 56 Cal. 131, 132 [38 Am.Rep. 52].) █ An additional indication of the policy against self-help is found in Penal Code section 418 which makes it a misdemeanor for any person to use ''any force or violence in entering upon or

---

ing him, and then only for that excess. The rule of the common law is the rule which obtains in this state, except in as far as it has been changed by the provisions of the code relative to the summary remedy provided therein for a forcible entry made upon real property. Under these provisions a right of action is given to one wrongfully in actual possession of property where a forcible entry is made, even by the owner, in which action damages occasioned through the forcible entry may be recovered, and judgment for the restitution of the property had. But the code prescribes a method of procedure and the extent of the remedy for such forcible entry, and that remedy is exclusive. A person wrongfully in possession, dispossessed by the owner of the property having a right of entry, and no excessive force being used in asserting it, is not entitled to maintain any other action than is afforded for a forcible entry under the code. He was not entitled to maintain, under such circumstances, any action whatever under the common law, and the common-law rule has only been changed in this state to the extent, and no further, that the code affords him a remedy under its provisions referred to which he otherwise would not have.'' (153 Cal. at pp. 126-127.)

detaining any lands or other possessions of another. . . .''
(See *Voll* v. *Hollis, supra,* 60 Cal. 569, 574; *Lorenz* v. *Hunt*
(1928) 89 Cal.App. 6, 12 [264 P. 336], overruled on other
grounds, *Vaughn* v. *Jonas* (1948) 31 Cal.2d 586, 606 [191
P.2d 432].)

We believe that the rule adopted in *Canavan* and *Walker* is
an unnecessarily restrictive one While the court may have
given a liberal interpretation to the forcible entry provisions
of the code, it chose to confine itself to actions under the code
and by so doing rejected the opportunity to enhance the legis-
lative policy objectives against self-help. ■ In the light
of this legislative policy, we are persuaded to hold that where
as in the instant case a plaintiff is in peaceable possession of
land, he may recover *in tort* for all damages for injuries to his
person or goods which are the natural and proximate result of
a forcible entry by another irrespective of whether the enter-
ing party has title or the right to possession.[14]

■ By so holding we give effect to the legislative policy
of preserving the public peace and recognize that since the act
of forcible entry is unlawful (Pen. Code, § 418) all of the
consequences of an unlawful act should attach to it. We also
avoid the very real possibility of such incongruous results as
may otherwise occur where a defendant may be convicted for
a forcible entry under Penal Code section 418 but nevertheless
may be immune from civil damages under *Canavan* and
*Walker.* Further, we remove the inequities which have existed
under the above decisions. By way of illustration, if a plain-
tiff whose land is forcibly entered by the defendant chooses to
proceed under the forcible entry statute, he may recover pos-
session and damages upon a showing of possession in himself
and a forcible entry by the defendant. If, however, he chooses
to bring an action sounding in tort but not under the statute,
he will be precluded from recovering damages should the
defendant establish title to or a right of possession of the
land. Not only would the plaintiff be precluded from recover-
ing damages for the defendant's conduct, the defendant

---

[14]We emphasize that our holding herein is confined to the possessor's
action for damages for injuries to his person or his goods. Since the
issue is not raised in the case at bench, we do not reach the question as
to whether the possessor can bring an action for damages for trespass
upon the land thus possessed. Nor do we reach the question as to whether
a person who is peaceably on the land but who is not in possession
thereof, as for example an invitee or guest, is entitled to recover from
the entering defendant for injuries to his person or goods resulting from
the forcible entry.

would also be encouraged to resort to self-help. By removing these obvious inequities and incongruities we adopt the view that, ''The law is not so far beneath the dignity of a scientific and harmonious system that its tribunals must hold in one form of action a particular act to be so illegal that immediate restitution must be made at the costs of the transgressor, and in another form of action that the same act was perfectly legal, and only the exercise of an acknowledged right.'' (*Reeder* v. *Purdy, supra,* 41 Ill. 279, 285.)

We intend by our holding today to give to a plaintiff in peaceable possession of land a right to recover *in tort* for damages for injuries to his person and goods against one forcibly entering the land. We reiterate that this holding gives full effect to the declared policy of this state against the use of self-help to recover possession of land and imposes liability on persons who engage in conduct which leads to a breach of the peace. ''It is a general principle that one who is or believes he is injured or deprived of what he is lawfully entitled to must apply to the state for help. Self-help is in conflict with the very idea of the social order. It subjects the weaker to risk of the arbitrary will or mistaken belief of the stronger. Hence the law in general forbids it.'' (5 Pound, Jurisprudence (1959) § 142, pp. 351-352.) ▮ To the extent that they are inconsistent, we overrule *Canavan* v. *Gray, supra,* 64 Cal. 5, and *Walker* v. *Chanslor, supra,* 153 Cal. 118.

▮ In view of the above holding we conclude that there was no necessity for the trial court to determine whether defendant had title to the disputed property and there was no error in its failure to make such finding.

▮ Defendant's second contention is that even if plaintiff may recover upon showing that he was in possession of the land, ''the plaintiff may not recover in this action for the simple reason that *there is no finding, nor any proof, of the plaintiff's possession* sufficient to enable him to recover for attempted removal of the fence.'' Defendant asserts that the findings and the evidence established only that plaintiff was in possession of the residence in which he lived and that even if plaintiff ''may have had authority to do certain acts to protect the ranch, this does not establish that he had possession of the entire ranch.''

The evidence shows that plaintiff sold Melody Ranch to Salvatore in 1934 for a nominal consideration. Salvatore testified that plaintiff had permission to live on the ranch rent free

.for his life[15] and that he "always has had the authority to take care of my affairs over there and always took charge of the ranch when I am not there, and to see everything was in order and sort of custodian of the ranch. . . ." The trial court found, by reference to the allegations of the complaint, that when plaintiff requested defendant to desist from removing the fence on March 18, 1961, "plaintiff [was] acting on behalf of his son and his son's wife, as their said agent and representative, in protection of their ownership of the said land and the said property thereon, and *also [was] acting on his own behalf in protection of his residence and occupancy on said land.*[16] . . ." (Italics added.) This indicates that Salvatore's permission to plaintiff to remain on the land was not restricted merely to the residence in which plaintiff lived but rather extended to the whole of the ranch thus making plaintiff an occupant. Further, Salvatore's permission coupled with plaintiff's agreement to take care of the land could be deemed to establish a tenancy at will between Salvatore and plaintiff with both of them having the right to possess the land jointly. (See *Jones* v. *Shay* (1875) 50 Cal. 508, 509; *Covina Manor, Inc.* v *Hatch* (1955) 133 Cal.App.2d Supp. 790, 793 [284 P.2d 580].) The record convinces us that plaintiff was peaceably in actual possession of the land and thus entitled to bring the instant action.

The judgment is affirmed. . . .

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

---

[15]Salvatore testified in response to a question by his counsel as to whether there was an arrangement between plaintiff and himself: "I don't know if you call it an arrangement, but that is the way it has been all the time. There was no definite arrangements between he and I. It has always been. He has always been on the ranch and that is part of his life." His counsel then asked: "Did you have an oral agreement he could live there because of the fact he transferred the property to you without full consideration, but only $10, as long as he lived and he would operate and oversee it and take care of it?" Salvatore responded: "And be there the rest of his life."

[16]It is clear from the complaint that the term "said land" has reference to Melody Ranch. Immediately after the description of the land in the complaint reference is made to the land as follows: "That said land since 1918 has been continuously cultivated with orchards. . . ." Numerous other references to "said land" are made in the complaint which are capable of no other interpretation than indicating Melody Ranch as described in the complaint.