Filed 6/6/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALEX R. BORDEN, as Administrator, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LORETTA STILES, <br><br> Defendant and Respondent. | G062001 <br><br> (App. Civ. No. Super. Ct. No. 30-2021-01223685; Super. Ct. No. 30-2021-01182200) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Knill, Judge.  Reversed and remanded.  Request for judicial notice.  Denied.

Law Offices of Liddle & Liddle, Layne L. Liddle, George Lee Liddle, Jr. and Raymond Zakari for Plaintiff and Appellant.

Public Law Center, Gina Verraster, Kenneth Babcock, and Monica Eav Glicken for Defendant and Respondent.

Defendant Loretta Stiles lives in a Laguna Woods residential unit (the property) that was owned by Dan Blechman. Stiles was permitted to live at the property by Blechman without provision for the payment of rent or the duration of her stay. Stiles had worked for Blechman for many years and, instead of being paid a salary, he allowed her to live at the property beginning in 2011 and also paid her expenses.

After Blechman passed away, the administrator of his estate, plaintiff Alex R. Borden, served Stiles with a 30-day notice to quit the property. After Stiles refused to leave the property, he filed the instant unlawful detainer action.

Borden filed a motion for summary judgment against Stiles. Stiles in turn filed a motion for summary judgment against Borden, arguing Borden's notice to quit failed to state just cause for terminating her tenancy, as required by the Tenant Protection Act of 2019 at Civil Code section 1946.2.[1] The parties agreed in their respective motions Stiles had a tenancy at will.

The trial court concluded section 1946.2 applied to Stiles's tenancy and consequently granted Stiles's motion and denied Borden's motion on the ground Borden's 30-day notice failed to state just cause for terminating the tenancy as defined in the statute. Borden appealed to the Appellate Division of the Orange County Superior Court (Appellate Division), which affirmed the trial court's judgment in favor of Stiles.

We granted Borden's petition to transfer the case to this court and we now reverse. We publish because our analysis involves the interplay of statutes enacted almost 150 years ago regarding the hiring of real property with the relatively recently enacted section 1946.2.

Our record contains evidence suggesting the tenancy at issue was created by a hiring under section 1925, as it shows Blechman permitted Stiles to live at the property in exchange for work she had performed for him at unspecified times. Such a

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

2

tenancy that is "terminable at the pleasure of one of the parties," however, would have terminated under section 1934 when Stiles was notified of Blechman's death. At that point, Stiles would have become a holdover tenant, and no longer in lawful occupation of the property. As section 1946.2, subdivision (i)(3) defines "'[t]enancy'" to be "the *lawful* occupation of a residential real property" (italics added), section 1946.2 would not apply to such an unauthorized occupancy.

The record, however, is silent on the specifics regarding the timeframe in which Stiles performed work for Blechman in exchange for her tenancy, when Blechman passed away, when Stiles was notified of his death, and whether thereafter Borden had potentially entered into a tenant relationship with Stiles. Because triable issues of material fact exist as to whether Stiles was in lawful occupation of the property within the meaning of section 1946.2, subdivision (i)(3), summary judgment should not have been entered in either party's favor. (See Code Civ. Proc., § 437c, subd. (c).) In light of the foregoing, we do not need to decide whether Stiles's tenancy with Blechman had been a tenancy at will or whether section 1946.2 applies to tenancies at will in general.

PROCEDURAL HISTORY AND SUMMARY OF UNDISPUTED FACTS

I.

THE VERIFIED UNLAWFUL DETAINER COMPLAINT AND THE VERIFIED ANSWER

On February 1, 2021, Borden filed a verified complaint for unlawful detainer against Stiles alleging "prior to February 15, 2019, Dan Blechman, by oral agreement, allowed [Stiles] to take possession of the real property . . . without any specified term for such possession and without any specific reservation of rent, thereby creating a tenancy at will." In the complaint, Borden further alleged that after he was made the administrator of Blechman's estate, he served a 30-day notice on Stiles requiring her to quit and deliver up possession of the property. Borden alleged Stiles did

not comply and instead "holds over and continues in possession of said demised premises, without the permission of [Borden] and under no claim of right."

Borden alleged the reasonable value for the use and occupancy of the property is $66.66 per day. He stated he sought that amount as damages "for January 15, 2021, and for each day thereafter until the date of judgment." Borden prayed for restitution and possession of the property, for termination of Stiles and Blechman's agreement, damages, and costs of suit.

Stiles filed a verified answer in which she alleged as an affirmative defense, among others, Borden's "demand for possession of a residential tenancy is based on a reason other than nonpayment of rent or other financial obligations, and [Borden] lacks just cause for termination of the tenancy, as defined in Civil Code section 1946.2(b)."

II.

THE PARTIES' DUELING MOTIONS FOR SUMMARY JUDGMENT

Borden moved for summary judgment on the grounds there were no triable issues of material fact, Stiles had no legal defenses to the unlawful detainer complaint, and Borden was "entitled to judgment for possession as a matter of fact and law." The same day, Stiles filed a motion for summary judgment brought on the ground Borden "cannot establish a necessary element to the cause of action" as his "Notice to Quit failed to state a just cause reason for terminating [Stiles's] tenancy as required by Civil Code section 1946.2."

The relevant evidence offered by the parties in support of and in opposition to the motions was undisputed and very limited in scope, confirming the following facts: (1) Blechman orally agreed to allow Stiles to take possession of the property without any specified term or reservation of rent; (2) Stiles took possession of the property before February 15, 2019, has continuously occupied the property for more than 12 months, and has never paid money for her occupancy; (3) on April 8, 2020, Borden was made administrator of the estate of Dan Blechman; (4) on December 15, 2020, Borden served a

4

30-day notice to quit which did not state a just cause reason under section 1946.2; and (5) after the notice period expired and Stiles continued to occupy the property, Borden initiated this unlawful detainer action. The parties stipulated if section 1946.2 were to apply, none of the exemptions specified in that section would apply here.

In addition, Stiles, in opposition to Borden's motion for summary judgment, produced her verified responses to form interrogatories Borden had propounded on her. Those responses included her statements she and Blechman had an oral agreement in 2011 that "as part of their business partnership" by which Stiles worked with Blechman for at least 20 years, Stiles "would reside in [the] subject property in exchange for [Stiles's] performance of work for [Blechman]." She further stated that, during the 20 years she worked for Blechman, "he did not pay [Stiles] a salary, but paid for [Stiles]'s expenses, provided a place for her to live, and agreed that [Stiles] would be taken care of at the end of their partnership." She also stated "[s]he worked for or was available to work for [Blechman] and in exchange, she resided in the subject property."

III.

THE TRIAL COURT GRANTS STILES'S MOTION, DENIES BORDEN'S MOTION, AND ENTERS JUDGMENT IN FAVOR OF STILES

In a written order, the trial court explained the question presented by the parties' motions is whether section 1946.2 applies to a tenancy at will. The trial court concluded the answer to this question is yes.

The trial court's conclusion was based on its determination (1) section 1946.2, subdivision (i)(3) itself broadly defines the term "'Tenancy'" to mean the lawful occupation of residential real property, regardless of the existence of a written lease; (2) notwithstanding section 1940's provision that Chapter 2 of Title 5 of the Civil Code in which section 1946.2 is placed applies to persons who *hire* dwelling units, the Legislature did not intend to limit the application of section 1946.2 to tenants who have hired property; and (3) the Legislature's intent to apply section 1946.2 to tenancies at will

5

is shown by its failure to include tenancies at will in the express exemptions set forth in the statute.

The court thereafter entered judgment in favor of Stiles.

IV.

THE APPELLATE DIVISION AFFIRMS THE JUDGMENT AND WE GRANTED BORDEN'S PETITION FOR TRANSFER

Borden appealed to the Appellate Division, seeking the reversal of the judgment in favor of Stiles and arguing "a remittitur should issue for the Trial Court to grant [Borden's] Motion for Summary Judgment." The Appellate Division affirmed the trial court's judgment, agreeing with the trial court "under a plain reading of this section," a tenant at will who has lawfully occupied a residential property for 12 months is entitled to "'just cause' protection" under section 1946.2. After the Appellate Division denied Borden's petition to certify the cause to the Court of Appeal, he petitioned this court to transfer the cause.

We granted the petition, issuing an order transferring the cause to this court pursuant to California Rules of Court, rules 8.1002, 8.1006, and 8.1008. We requested the parties to file points and authorities addressing the application of the Tenant Protection Act of 2019. Each party filed a supplemental brief.

Borden filed a motion requesting this court take judicial notice of the legislative history of the Tenant Protection Act of 2019. In his request, Borden states such legislative history shows the Legislature did not intend "to alter the prior definition of a 'tenant-at-will,' such that such a 'tenancy' would grow into, essentially, a life estate after one-year of occupation, without rent or reservation of time." Stiles filed an opposition to the request.

As we explain in detail *post*, the resolution of this appeal does not require us to decide whether Stiles had a tenancy at will or whether section 1946.2 generally

6

applies to a tenancy at will.  Because the proffered legislative history is irrelevant to our analysis, we deny the request for judicial notice.

## DISCUSSION

### I.

### UNLAWFUL DETAINER ACTIONS GENERALLY, GOVERNING STANDARDS FOR SUMMARY JUDGMENT MOTIONS, AND THE RULES OF STATUTORY INTERPRETATION

"'Unlawful detainer actions are authorized and governed by state statute. (Code Civ. Proc., § 1161 et seq.)  The statutory scheme is intended and designed to provide an expeditious remedy for the recovery of possession of real property.'  [Citations.]  'The remedy is available in only three situations:  to a lessor against a lessee for unlawfully holding over or for breach of a lease; to an owner against an employee, agent, or licensee whose relationship has terminated; and to a purchaser at an execution sale, a sale by foreclosure, or a sale under a power of sale in a mortgage or deed of trust against the former owner and possessor.'  [Citation.]"  (*Taylor v. Nu Digital Marketing, Inc.* (2016) 245 Cal.App.4th 283, 288-289.)

The procedures governing a motion for summary judgment in an unlawful detainer action are streamlined (e.g., separate statements are not required under section 437c, subdivision (s) of the Code of Civil Procedure), but such a motion "shall be granted or denied on the same basis as a motion under [Code of Civil Procedure s]ection 437c" (Code Civ. Proc., § 1170.7).  (See Cal. Rules of Court, rule 3.1351.)

"In moving for summary judgment, a 'plaintiff . . . has met' his 'burden of showing that there is no defense to a cause of action if' he 'has proved each element of the cause of action entitling' him 'to judgment on that cause of action.  Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.  The defendant . . . may not rely upon the mere allegations or denials' of his

7

'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

"Similarly, in moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' [Citation.]" (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 849.)

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers . . . .' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. [Citation.] [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.]" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

We review matters of statutory interpretation de novo. (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 188-189.) "Statutory interpretation requires us 'to ascertain and effectuate the intended legislative purpose.' [Citation.] We consider the provisions' language in its 'broader statutory context' and, where possible, harmonize

that language with related provisions by interpreting them in a consistent fashion. [Citation.]  If an ambiguity remains after this preliminary textual analysis, we may consider extrinsic sources such as legislative history . . . ." (*Id.* at p. 189.)  "'In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.'  [Citation.]" (*Martinez v. Combs* (2010) 49 Cal.4th 35, 51.)

## II.

### SECTION 1946.2

"California's first comprehensive antirent g[o]uging and eviction control law, the Tenant Protection Act of 2019 (Assem. Bill No. 1482 (2019-2020 Reg. Sess.))," added sections 1946.2, 1947.12, and 1947.13 to the Civil Code, effective January 1, 2020.  (*2710 Sutter Ventures, LLC v. Millis* (2022) 82 Cal.App.5th 842, 864; see *Better Housing for Long Beach v. Newsom* (C.D.Cal. 2020) 452 F.Supp.3d 921, 926.)  Each of the three statutes added by the act provides it shall remain in effect only "until January 1, 2030, and as of that date is repealed."  (§§ 1946.2, subd. (k); 1947.12, subd. (*l*); 1947.13, subd. (c).)  Only the applicability of section 1946.2 is at issue in the instant case as the latter two statutes do not address evictions, but limitations on rental rates.  (See § 1947.12 [limitations on gross rental rate increase]; § 1947.13 [limitations on rental rates upon expiration of rental restrictions].)

Section 1946.2, subdivision (a) provides in relevant part:  "*Notwithstanding any other law*, after a tenant has continuously and lawfully occupied a residential real property for 12 months, the owner of the residential real property shall not terminate the tenancy without *just cause*, which shall be stated in the written notice to terminate tenancy."  (Italics added.)  Subdivision (b) of section 1946.2 sets forth two types of just cause—"[a]t-fault just cause" and "[n]o-fault just cause"—necessary to terminate a tenancy.  The following circumstances establish at-fault just cause:  default in the payment of rent; a breach of a material term of the lease; "maintaining, committing, or

9

permitting the maintenance or commission of a nuisance"; committing "waste"; the circumstance where the tenant had a written lease that terminated on or after January 1, 2020, and the tenant refused to execute a written extension or renewal of a lease with similar terms; certain criminal activity by the tenant; assigning or subletting the premises in violation of the lease; the tenant's refusal to allow the owner to enter the property; using the premises for an unlawful purpose; an employee, agent, or licensee's failure to vacate after their termination as an employee, agent, or licensee; and when the tenant fails to deliver possession of the residential property after providing the owner written notice of intent to terminate the hiring of the real property. (§ 1946.2, subd. (b)(1)(A)-(K).)

Section 1946.2 no-fault just cause includes the circumstances when the owner, or the owner's spouse, domestic partner, children, grandchildren, parents or grandparents intend to occupy the residential real property; the withdrawal of the residential property from the rental market; an order for the owner to comply with certain orders by a governmental agency or local ordinances that necessitate vacating the property; and the owner's "[i]ntent to demolish or to substantially remodel the residential real property." (§ 1946.2, subd. (b)(2)(A)-(D).) Section 1946.2 also requires an owner, under specified circumstances, to provide relocation assistance, waive rent for the final month of tenancy, and comply with notice requirements. (*Id.*, subds. (d), (f).)

Section 1946.2, subdivision (e) exempts from application of the statute specified types of "residential real properties or residential circumstances," including but not limited to "[t]ransient and tourist hotel occupancy," nonprofit hospitals, religious facilities, extended care facilities, licensed residential care facilities, dormitories, certain owner-occupied residencies, and government-regulated affordable housing. (§ 1946.2, subd. (e)(1)-(9); see *Better Housing for Long Beach v. Newsom, supra*, 452 F.Supp.3d at pp. 926-927.)[2]

---

[2] In addition, subdivision (j) of section 1946.2 provides "[t]his section shall not apply to a homeowner of a mobilehome . . . ."

Significantly, section 1946.2, subdivision (i)(3) provides, for the purposes of that statute, the term "'[t]enancy' means the lawful occupation of a residential real property and includes a lease or sublease."

III.

TRIABLE ISSUES OF FACT EXIST AS TO WHETHER STILES WAS IN LAWFUL OCCUPATION OF THE PROPERTY AT THE TIME BORDEN SOUGHT TO TERMINATE HER TENANCY

After noting it was "undisputed [Stiles] is a tenant at will," the trial court granted Stiles's motion for summary judgment on the ground section 1946.2 applies to tenancies at will. The Appellate Division affirmed the judgment after concluding section 1946.2 applies to tenancies at will if the tenant has continuously and lawfully occupied the subject residential real property for 12 months.

"'A tenancy at will is an estate which simply confers a right to the possession of premises leased for such indefinite period as both parties shall determine such possession shall continue. . . . The tenant at will is in possession by right with the consent of the landlord either express or implied, and he does not begin to hold unlawfully until the termination of his tenancy. His estate is a leasehold and he holds in subordination to the title of the landlord.' [Citation.] And 'A permissive occupation of real estate, where no rent is reserved or paid and no time agreed on to limit the occupation, is a tenancy at will.' [Citations.]" (*Covina Manor, Inc. v. Hatch* (1955) 133 Cal.App.2d Supp. 790, 793 (*Covina*).)

Here, Stiles's tenancy may very well have been properly characterized as a tenancy at will in light of the undisputed evidence Blechman had provided Stiles a tenancy of indefinite duration that did not involve the payment of rent. (See *Covina, supra*, 133 Cal.App.2d Supp. at pp. 793-794 [whether the legal character of an occupancy is a tenancy at will is a question of law]; see also *Garabedian v. Los Angeles Cellular Telephone Co.* (2004) 118 Cal.App.4th 123, 128 ["An agreement of the parties does not

11

bind the court if it is contrary to law"]; *DeCelle v. City of Alameda* (1960) 186 Cal.App.2d 574, 579 [parties' stipulation cannot bind the court on issue of law].)

But the proper characterization of Stiles's tenancy is not dispositive in the resolution of this appeal because evidence in the record, which shows Stiles might have hired the property from the now deceased Blechman, creates triable issues of material fact whether a condition precedent to section 1946.2's application was satisfied—whether Stiles was in lawful occupation of the property within the meaning of section 1946.2, subdivision (i)(3).

The Legislature placed section 1946.2 within Chapter 2 (§§ 1940-1954.1) of Title 5 of the Civil Code. Title 5 is comprised of Chapters 1 through 7 and sections 1925 through 1997.270. Section 1940, subdivision (a) (preceding section 1946.2 in Chapter 2 of Title 5) states: "Except as provided in subdivision (b),[3] *this chapter* shall apply to all persons *who hire dwelling units* located within this state including tenants, lessees, boarders, lodgers, and others, however denominated." (Italics added.)

Title 5 begins with section 1925, which broadly defines the term "hiring" as "a contract by which one gives to another the temporary possession and use of property, other than money, *for reward*, and the latter agrees to return the same to the former at a future time." (Italics added.)[4] Our record includes Stiles's verified responses to form interrogatories showing Blechman granted her possession and use of the property in exchange for work she had performed for him at unspecified times in relation to her

---

3  "'[P]ersons who hire'" under subdivision (b) of section 1940 does not include occupancy in a hotel, motel, residence club or other facility under specified circumstances.

4  Section 1925 was enacted in 1872—the same year section 1947 was enacted. Section 1947 uses the word "rent." Had the Legislature intended the word "reward" in section 1925 to be construed as limited to the payment of rent, it would have used the word "rent" in that statute or otherwise said so.

12

tenancy.  (The record does not show Borden objected to such evidence or otherwise acknowledged such evidence in this case.)

Specifically, Stiles's evidence includes her statements she and Blechman had an oral agreement in 2011, "as part of their business partnership," by which Stiles worked with Blechman "for at least twenty (20) years in a partnership," and Stiles "would reside in subject property in exchange for [Stiles's] performance of work for [Blechman]."  She further stated that during the 20 years she worked for Blechman, "he did not pay [her] a salary, but paid for [her] expenses, provided a place for her to live, and agreed that [she] would be taken care of at the end of their partnership."  She also stated "[s]he worked for or was available to work for [Blechman] and in exchange, she resided in the subject property."

That Stiles's tenancy might have been based on a hiring is significant here given the undisputed evidence of Blechman's death.  Section 1934, which is also contained in Title 5 of the Civil Code, provides:  "If the hiring of a thing is terminable at the pleasure of one of the parties, it is terminated by notice to the other of his death or incapacity to contract.  In other cases it is not terminated thereby."

In other words, upon Stiles receiving notice of Blechman's death, if her tenancy was based on a hiring, it would have automatically terminated by operation of law.  Absent subsequent events that might have created a new tenancy (e.g., Borden and Stiles entering an agreement, Borden granting Stiles permission to continue occupancy, or Borden accepting rent from Stiles), Stiles's status in continuing to occupy the property following receipt of notice of Blechman's death would be that of a holdover tenant.  Such an occupancy would be unlawful, rendering section 1946.2 inapplicable to the eviction

13

proceedings initiated by Borden. (See § 1946.2, subd. (i)(3) [tenancy is *lawful* occupation of residential real property].).)[5]

Our record, however, is silent regarding when Blechman passed away, when Stiles was notified of his death, and whether thereafter Borden had potentially entered into a new tenant relationship with Stiles. In his supplemental brief, Borden argues a tenancy at will cannot involve a hiring, and because it cannot involve a hiring, a tenancy at will is not governed by Chapter 2 of Title 5 of the Civil Code, which includes section 1946.2. Therefore, Borden argues, as Stiles's tenancy was a tenancy at will, the trial court erred by entering judgment in Stiles's favor instead of in his own. Borden's argument, however, assumes tenancies at will can never involve the hiring of real property. Borden has cited no authority which supports his argument.

While a tenancy at will is, by definition, an agreement whereby a tenant is granted permission to occupy real property without provision for the payment of rent, it would appear that definition does not preclude a landowner from giving possession and use of real property for a reward other than rent within the meaning of section 1925. (See *Daluiso v. Boone* (1969) 71 Cal.2d 484, 501 [agreement whereby landowner son permitted father to remain on the land "coupled with [the father]'s agreement to take care of the land could be deemed to establish a tenancy at will"].)

In any event, we do not need to resolve this issue because the evidence shows Stiles's tenancy might have arisen out of a hiring, and if so, regardless of whether it was tenancy at will or some other form of tenancy, it would have terminated upon her receipt of notice of Blechman's death, by operation of section 1934. As triable issues of material fact therefore exist regarding the threshold issue whether Stiles was in lawful occupation of the property within the meaning of section 1946.2, subdivision (i)(3),

---

[5] Pursuant to the parties' arguments, the trial court and the Appellate Division assumed Stiles's occupancy was lawful within the meaning of section 1946.2, subdivision (i)(3) because the parties did not dispute she was a tenant at will.

14

summary judgment should not have been granted in favor of either party. Given the specific circumstances of this case, we also do not reach the issue whether section 1946.2 applies to tenancies at will in general.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings. Appellant to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


SANCHEZ, J.

15